[L. A. No. 1128.    Department One.—October 8, 1903.]

## FANNIE C. HARRINGTON et al., Respondents, v. LOS ANGELES RAILWAY COMPANY, Appellant.

ACTION FOR DEATH—CONTRIBUTORY NEGLIGENCE—COLLISION OF BICYCLE WITH ELECTRIC CAR—VIOLATION OF ORDINANCE.—In an action for death resulting from collision of a bicycle with an electric car, it was contributory negligence as matter of law for deceased to ride the bicycle within the corporate limits of a city at a speed greatly in excess of that limited by a city ordinance.

ID.—WANTON AND RECKLESS NEGLIGENCE OF ELECTRIC CAR.—When it appears that, notwithstanding the contributory negligence of the bicycle rider, the motorman of the electric car discovered his perilous situation at such a time and in such circumstances that he could by the exercise of ordinary care have avoided the collision, but, notwithstanding the warnings and entreaties of bystanders to stop the car, wantonly and recklessly pushed the car forward, whereupon the bicycle rider made all reasonable and practical endeavors without success to avoid the collision, the liability of the electric car for the death of the bicycle rider results as matter of law.

ID.—DESIGN OF MOTORMAN TO INJURE NOT ESSENTIAL—INSTRUCTION.— No purpose or design on the part of the motorman to injure the bicycle rider was essential to defendant's liability. An instruction to the jury, substantially telling them, that, although one might not have the actual intent to injure, still if there is on his part a. reckless indifference or disregard of the natural or probable consequence of his action, conscious from his knowledge of existing circumstances and conditions that his conduct will likely or probably result in injury, he is guilty of wanton negligence, contains no prejudicial error.

ID.—DISCOVERY OF DANGEROUS POSITION—OPPORTUNITY TO AVOID INJURY —DUTY OF PERSON IN PERIL—REASONABLE EFFORT TO ESCAPE DANGER—QUESTION FOR JURY.—When the defendant discovered the negligent injured party already in a dangerous position, under such circumstances as precluded the assumption that he could or would get out of the way, if he failed to use ordinary care to avoid the injury, having a clear opportunity to do so, he cannot escape liability therefor, on the ground that it was the duty of the person in peril to discover his own danger. It is sufficient that the person in such peril used all reasonable endeavors to avoid the injury after he actually discovered his own peril; and the reasonableness of his efforts to escape injury after discovery of the danger was a question for the jury.

ID.—LAST CLEAR OPPORTUNITY TO AVOID ACCIDENT—PROXIMATE CAUSE. —He who knows of the danger and can avoid it, as against one who does not in fact know thereof, has the last clear opportunity to avoid the accident, and his negligence in not availing himself of such opportunity is the proximate cause of the injury.

ID.—REQUESTED INSTRUCTION—MODIFICATION—"GROSS NEGLIGENCE" OF DECEASED.—A requested instruction predicating "gross negligence" of the deceased because riding at a greater rate of speed than allowed by the city ordinance and not looking for an approaching car until too late to stop, so as to avoid collision, was not proper, and the defendant cannot complain of a modification thereof by adding, "or did not attempt to turn it out of the way of said car before said collision occurred," as one of the prerequisites of gross negligence on the part of the deceased.

ID.—"RECKLESS OR WANTON CONDUCT"—QUESTION OF FACT.—Where certain instructions requested by defendant directing a verdict in his favor were modified by adding the proviso, "Unless you shall find that the motorman in charge of defendant's car, after perceiving the dangerous situation then and there existing, did recklessly *or* wantonly send his car forward," and adding, "Whether or not such reckless or wanton conduct of the defendant did occur and cause the collision is a question of fact for you to determine from the evidence," the modification is · not objectionable as making "recklessness" the equivalent of "wantonness," as used in the instructions.

ID.—IMPROPER REQUESTS—OMISSION OF QUALIFICATIONS—CONDUCT OF DEFENDANT AFTER DISCOVERY OF PERIL OF DECEASED.—Instructions requested for the defendant which withdrew from the jury all question as to the conduct of the defendant after discovering the peril of the deceased were improper, and were properly modified to prevent such withdrawal.

ID.—CONTRIBUTORY NEGLIGENCE—"ORDINARY NEGLIGENCE" OF DEFENDANT.—An instruction based on the contributory negligence of the deceased, which was modified by allowing it to bar recovery "as against any *ordinary* negligence of the defendant," does not import the doctrine of comparative negligence, but the words "ordinary negligence" mean such negligence only as might have existed in the absence of actual knowledge by the defendant of the perilous condition of the deceased, and of a clear opportunity to avoid injuring him.

ID.—VERDICT NOT AGAINST LAW—INSTRUCTION AS TO WANTON NEGLIGENCE OF DECEASED.—An instruction that if the jury believe from the evidence that deceased approached the crossing where the accident occurred at a reckless rate of speed, without exercising any care or caution to ascertain whether any person was on or approaching the same, and that in consequence thereof the collision occurred, he was guilty of wanton or willful negligence, and their verdict must be for the defendant, notwithstanding any failure on the part of the motorman to exercise ordinary care, does not render the verdict for the plaintiffs against law, where the evidence was not such that the jury were bound to find that deceased approached the crossing without exercising any care or caution as stated, or that in consequence of such approach, the collision occurred.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Bicknell, Gibson & Trask, and Dunn & Crutcher, for Appellant.

The contributory negligence of the deceased bars recovery. (Civ. Code, sec. 1714; *Bolin* v. *Chicago etc. Ry. Co.,* 84 N. W. Rep. 446; *Tesch* v. *Milwaukee Ry. and Light Co.,* 84 N. W. Rep. 823, 826; *Watermoler* v. *Fox River Electric etc. Co.,* 85 N. W. Rep. 663, 665; *Everett* v. *Los Angeles etc. Ry. Co.,* 115 Cal. 105, 127; *Hager* v. *Southern Pacific Co.,* 98 Cal. 303, 310; *Holmes* v. *Southern Pacific Co.,* 97 Cal. 161; *Murphy* v. *Dean,* 101 Mass. 455;[1] *O'Brien* v. *McGlinchey,*

---

[1] 3 Am. Rep. 390.

68 Me. 552; *Sego* v. *Southern Pacific Co.,* 137 Cal. 405.)    The verdict was against law.    (*Aguirre* v. *Alexander,* 58 Cal. 34.)

Hunsaker & Britt, and Charles L. Batcheller, for Respondents.

From the facts proved to the satisfaction of the jury, the liability of the defendant for the death of Harrington follows as matter of law, and the verdict of the jury must be sustained.    (*Esrey* v. *Southern Pacific Co.,* 103 Cal. 541, 544; *Fox* v. *Oakland Cons. Street Ry. Co.,* 118 Cal. 55.;[1] *Cunningham* v. *Los Angeles Ry. Co.,* 115 Cal. 501; *Needham* v. *San Francisco etc. R. R. Co.,* 37 Cal. 409, 419, 424; *Manners* v. *Champion,* 40 Cal. 121-125; *Lemasters* v. *Southern Pacific Co.,* 131 Cal. 105; Shearman and Redfield on Negligence, sec. 99; Cooley on Torts, p. 674; *Valin* v. *Milwaukee etc. Ry. Co.,* 82 Wis. 1;[2] *Kansas Pacific Ry. Co.* v. *Whipple,* 39 Kan. 531; *Louisville Ry. Co.* v. *Blaydes,* 21 Ky. Law Rep. 480, 668.) The party who has the last clear opportunity of avoiding the accident is not excused by the negligence of any one else. His negligence, and not that of the one first in fault, is the sole proximate cause of the injury.    (*Esrey* v. *Southern Pacific Co.,* 103 Cal. 541; Shearman and Redfield on Negligence, sec. 99; Cooley on Torts, 2d ed., p. 811; Beach on Contributory Negligence, 2d ed., secs. 24, 25, 33; Bishop on Non-Contract Law, secs. 462, 463; *Inland etc. Coasting Co.* v. *Tolson,* 139 U. S. 551; *White* v. *Lang,* 128 Mass. 598;[3] *Steele* v. *Burkhardt,* 104 Mass. 59;[4] *Neanow* v. *Uttech,* 46 Wis. 581.)

ANGELLOTTI, J.—This action was instituted by the plaintiffs, the widow and minor children of Arthur E. Harrington, deceased, for damages alleged to have been sustained by them by reason of the death of deceased, which death was alleged to have been caused by the negligence of defendant.    A verdict was rendered in plaintiff's favor for ten thousand dollars, and from the judgment entered thereon and an order denying its motion for a new trial defendant has appealed.

It is earnestly contended that the evidence was insufficient to sustain the verdict.    The claim in this regard is, that, as-

---

[1] 62 Am. St. Rep. 216.

[2] 33 Am. St. Rep. 17, 27.

[3] 35 Am. Rep. 402.

[4] 6 Am. Rep. 191.

suming that the defendant was negligent, still the evidence shows that the deceased was guilty of such contributory negligence as will preclude a recovery on the part of plaintiffs.

The deceased was at the time of the accident, July 4, 1900, participating in a long-distance handicap bicycle race from Los Angeles to San Pedro or Santa Monica, a distance of about twenty miles. This race was described as "the usual 4th of July race." The start was from the corner of Sixth and San Pedro streets in the city of Los Angeles, and the course was southerly from Sixth Street along San Pedro Street, between the double tracks of defendant's street-railway on said street as far as Washington Street. On Ninth Street, which intersects San Pedro Street between Sixth and Washington streets, was a single track railway of the defendant, crossing said double tracks on San Pedro Street nearly at right angles. The participants in the race were numerous, probably more than one hundred, and they were started in groups, every fifteen seconds, or less in some cases, for about twelve minutes. Several groups of riders had preceded the group of which deceased was a member, and which consisted of nine men. While the last four of these riders were approaching the Ninth-Street track, the other five having already crossed the same, one of defendant's Ninth-Street electric cars, proceeding westerly along said street, crossed San Pedro Street in front of them. The riders were going at a high rate of speed, probably twenty miles an hour, although some of the witnesses put it a little lower and some higher. The car was proceeding two and one-half to four miles an hour. The deceased, having discovered the approach of the car, left the group with which he was riding and attempted either to pass in front of the car on the westerly side of San Pedro Street, or to turn up Ninth Street, and in so doing collided with the right-hand front corner of the car and was killed. The other three riders attempted to pass by the rear of the car. One of them testified that when about fifteen or twenty feet from the car he threw himself sideways from his wheel to avoid striking the car, which he would otherwise have done, and, striking the ground, rolled clear to the car against its side, and the other two riders fell over him. The railway tracks on San Pedro Street were lined with people

witnessing the race, such lines extending across Ninth Street and the railway tracks of defendant thereon.

At the time of the accident there was an ordinance of the city of Los Angeles which prohibited any person from riding or propelling any bicycle within the corporate limits of the city at a rate of speed greater than eight miles per hour. The deceased was violating this ordinance, and was consequently guilty of negligence, without which, undoubtedly, the accident would not have occurred. If there had been no ordinance regulating the speed of bicyclists, it might well be contended that the evidence would have sustained a finding of the jury that the deceased had not been guilty of contributory negligence, a finding that, under all the circumstances shown, the deceased was justified in assuming that the course between the railway tracks along San Pedro Street would be kept sufficiently clear of obstructions to allow him to go at as high a rate of speed as he could, that he used all such precautions as a reasonable man under the same circumstances would use, that he discovered defendant's car as promptly as a reasonable man using such precautions would discover it, and that, when he discovered the car, he used reasonable care in attempting to avoid a collision therewith. But he was guilty of negligence in his violation of the provisions of the ordinance, and if it had not been for this negligence on his part, the accident would not have occurred.

The complaint alleges that the defendant did, by its motorman having charge of the operation of the car, "negligently, wantonly, and with wanton and reckless indifference to the safety of said Arthur E. Harrington, drive and propel said car against him, . . . who was then and there in full sight and view of said motorman," in consequence of all which said Harrington died.

The claim of the plaintiffs in this connection is, that, notwithstanding the negligence of the deceased, the motorman was aware of the perilous position in which the deceased had placed himself, and could, by the exercise of ordinary care, have avoided the accident, but failed to exercise such care to so do, and recklessly drove his car forward in the path of the racers, and that this negligence on his part was the proximate cause of the death of the deceased. It will thus be seen

that plaintiffs invoked the rule enunciated in several opinions of this court to the effect that he who last has a clear opportunity of avoiding an accident by the exercise of proper care to avoid injuring others must do so.

There was ample evidence to justify the jury in finding that defendant's motorman discovered the perilous position in which the deceased and his companions were placed at such a time and under such circumstances, that he could by the exercise of ordinary care have avoided injuring them, and that he did not exercise such care. It needs no argument to demonstrate that bicycle racers traveling at the rate of twenty miles an hour or more along a narrow path lined with spectators on both sides, and only eighty-five feet away (as the testimony of one disinterested witness indicated) from a place on that path towards which they were going over which an electric car was about to cross, were already in a position of great peril by reason of the approach of said car. Such circumstances would naturally convey to the mind of any reasonable man having knowledge thereof the question as to whether the riders, even though they immediately discovered the approach of the car, which was doubtful, would be able to get out of the way, and whether they must not inevitably cross the track along which the car was about to go, however much they might endeavor to avoid so doing after discovering the car, in order to escape collision. There is no parallel between a case presenting such circumstances and the ordinary case where a person is discovered walking or riding towards a railroad track. Ordinarily, the person operating the car has the right to assume that the one so approaching is able to and will care for himself, by taking all necessary precautions to observe the approach of the car, and that he will not place himself on the track at such a time as to be injured thereby. But no such assumption could be held to be justified under the peculiar circumstances already stated.

There was evidence warranting the jury in finding that the motorman, who confessedly knew that the bicycle race was then in progress on San Pedro Street, was warned by some of the numerous bystanders before he had reached the easterly line of San Pedro Street that the racers were coming

some calling upon him to stop the car, and others exclaiming
that the racers were coming; that some stood on the track
in front of the car, endeavoring to stop the car by calling
upon the motorman. He nevertheless proceeded, traveling
at from two and one half to four miles per hour, forcing the
people in front to retire from the track; that he himself,
after hearing the various warnings, saw the racers approach-
ing under the circumstances already detailed, when he was
still at least twenty or twenty-five feet east of the easterly
line of the path along which they were proceeding; that after
such discovery he could easily have stopped his car before it
reached the path along which the bicyclists were proceeding,
and thus have insured absolute safety to the riders, but that,
on the contrary, he pushed his car forward, in reckless dis-
regard of the dangerous position of deceased and his com-
panions, knowing, or having reasonable cause to believe, that
they must cross the track over which he was about to go.
It is true that the evidence is conflicting on some material
points, and that the motorman testified that he did not dis-
cover the approach of the riders until it was too late to stop,
and that he then used all reasonable care to avoid injuring
them. But the jury evidently did not believe this evidence
to be true, and it was for them to determine the facts. There
was also ample evidence to justify the jury in finding that
immediately upon discovering his dangerous position the
deceased exercised reasonable care in endeavoring to avoid
injury. One of his fellow-riders testified that the deceased
exclaimed: "My God, look at that car!" And immediately
switched off and tried, as he supposed, to go around the front
end of the car. The fatal result and the escape from serious
injury of the others is in no way determinative of the ques-
tion as to whether he used such reasonable care, for, as has
been well said, "It is always easy, after an accident, to see
how it could have been avoided, but a man's duty before the
calamity is not measured by such *ex post facto* informa-
tion." (*Liverpool etc. Ins. Co.* v. *Southern Pacific Co.,* 125
Cal. 434, 439.) It must be remembered that a person in
great peril, where immediate action is necessary to avoid it,
is not required to exercise all that presence of mind and care-
fulness which are justly required of a careful and prudent
man under ordinary circumstances. The reasonableness of

his effort to escape injury after discovery of the danger was a question for the jury, to be determined by them in view of all the circumstances shown by the evidence. We therefore have a case where the jury were warranted in finding the facts to be as follows, viz.: Deceased, by reason of his own negligence, was placed in a position of peril with relation to defendant's car. The defendant knew that the deceased was so placed, knew that it was at least doubtful whether the deceased could by any act of his remove himself from such peril, and knew that it could by the exercise of ordinary care, by simply stopping its car, absolutely remove the source of danger and avoid the injury. It failed to exercise such care, and recklessly pushed its car forward into the path over which the deceased was approaching, its motorman preferring to take the chance of getting over before deceased arrived at the crossing. The deceased, immediately upon discovering his dangerous position, used all reasonable care, and made all practicable effort to avoid the accident.

Upon this state of facts, established as the facts of this case by the verdict of the jury, the liability of the defendant follows as a matter of law, and the verdict is fully sustained by the evidence.

It would be difficult to find a case more clearly justifying the application of the rule so often approved by this court, to the effect that one having knowledge of the dangerous situation of another, and having a clear opportunity by the exercise of proper care to avoid injuring him, must do so, notwithstanding the latter placed himself in such situation of danger by his own negligence. (*Lee* v. *Market-Street Ry. Co.*, 135 Cal. 293; *Fox* v. *Oakland Cons. St. Ry. Co.*, 118 Cal. 55;[1] *Esrey* v. *Southern Pacific Co.*, 103 Cal. 541; *Cunningham* v. *Los Angeles Ry. Co.*, 115 Cal. 561; *Abrahams* v. *Los Angeles Traction Co.*, 124 Cal. 411; *Crowley* v. *City R. R. Co.*, 60 Cal. 628; *Meeks* v. *Southern Pacific R. R. Co.*, 56 Cal. 513;[2] *Needham* v. *San Francisco etc. R. R. Co.*, 37 Cal. 409.) It is immaterial whether the liability of the defendant in such a case be based upon the theory that the negligence of the defendant, being the later negligence, is the sole proximate cause of the injury, or upon the theory that

---

[1] 62 Am. St. Rep. 216.    [2] 38 Am. Rep. 67, and note.

defendant has been guilty of willful and wanton negligence. In either case the liability would exist, for where an act is done willfully and wantonly, contributory negligence upon the part of the injured person is no bar to a recovery. (*Esrey* v. *Southern Pacific Co.*, 103 Cal. 541.) As said by Mr. Beach in his work on Contributory Negligence, "When one, after discovering that I have carelessly exposed myself to an injury, neglects to use ordinary care to avoid hurting me, and inflicts the injury upon me as a result of his negligence, there is very little room for a claim that such conduct on his part is not willful negligence." It is, of course, true, as urged by defendant, that it is essential to such liability that the defendant did actually know of the danger, and that there is no such liability where he does not know of the peril of the injured party, but would have discovered the same but for remissness on his part. (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 227.) This, however, does not mean, as seems to be contended, that defendant must know that injury is *inevitable* if he fails to exercise care, and the decisions indicate no such requirement. It is enough that the circumstances *of which the defendant has knowledge* are such as to convey to the mind of a reasonable man a question as to whether the other party will be able to escape the threatened injury. One in such a situation is in a dangerous position. It was said in the prevailing opinion in *Everett* v. *Los Angeles etc. Ry. Co.*, 115 Cal. 125, 126, distinguishing that case from those where the principle under discussion is applicable: "The case is not like one where the injured party is discovered in time lying or standing upon a railroad track under such circumstances as to make it doubtful whether he can or will get out of the way; or where one is seen attempting either on foot or otherwise to make a crossing; or passing along or on its track over a bridge or narrow causeway, or in a deep cut or tunnel, where to turn aside would be either dangerous or impossible. . . . Persons cannot be recklessly or wantonly run down on a railroad track, however negligent themselves, *where the circumstances are such as to convey to the mind of a reasonable man a question as to whether they will be able to get out of the way.*" (See, also, *Meeks* v. *Southern Pacific R. R. Co.*, 56 Cal. 513, 515.[1])

---

[1] 38 Am. Rep. 67, and note.

It cannot be held, in view of the evidence in the record and the finding of the jury, that the negligence of the deceased continued to the moment of the accident, and that both parties were contemporaneously and actively in fault at the time, thereof, and what is said in several cases as to the inability of the injured party to recover under such conditions (see *Holmes* v. *Southern Pacific Co.*, 97 Cal. 161; *Sego* v. *Southern Pacific Co.*, 137 Cal. 405; *Everett* v. *Los Angeles etc. Ry. Co.*, 115 Cal. 105) is inapplicable here. The deceased did unquestionably discover his dangerous situation before the accident, and the verdict is a finding that he used all reasonable care and made all practicable effort to avoid the accident.

Defendant contends that there may have been a moment after the motorman discovered the approach of the racers during which deceased had failed to discover the approach of the car, and that during this moment deceased continued to proceed until it was too late to escape injury, and that he was thereby guilty of negligence precluding a recovery. It may be freely admitted that the deceased did not discover the approach of the car as early as the motorman discovered the approach of the deceased, but we are unable to see anything to the advantage of defendant's cause in such a condition of affairs. If the motorman discovered the deceased *in* a dangerous situation, and the jury have found that he did, it was his duty to use ordinary care to avoid injuring him, regardless of whether or not the deceased was aware of his approach,—and the jury have found that he did not use such care.

That the evidence was sufficient to justify a conclusion that the motorman had the last clear opportunity to avoid the accident seems very clear. We shall have occasion to consider this contention of defendant again, in discussing the instructions to the jury.

The motorman, Myer, having been examined by defendant as to the circumstances of the accident, was asked: "Would you have moved that car in there, if you had supposed thereby you were endangering the lives of those bicycle riders?" Plaintiffs' objection thereto was sustained. The witness then testified as follows: "I thought that it was best

to move on at that juncture, because I thought I had plenty
of time, and also that it was dangerous for me to stop the
car at that time.'' It is unnecessary to discuss the question
as to whether or not error was committed in sustaining the
objection, for the subsequent testimony of the witness was a
complete statement as to his reason for moving the car for-
ward. He said that he thought he had plenty of time to
cross, and that it would be dangerous to stop. This excludes
any supposition that he was endangering the lives of the
riders by moving on. What he would have done as to moving
on, if he had supposed otherwise than he did, is entirely
immaterial.

Complaint is made as to various instructions given at the
request of the plaintiffs. It is urged that the jury may have
concluded from plaintiffs' fourth instruction that they were
authorized in finding a verdict against the defendant, al-
though they may have believed that the motorman neither
expressly nor impliedly intended to injure deceased or any
one else. No purpose or design on the part of the motorman
to injure was essential to defendant's liability, and the plain
object of the instruction was to so inform the jury. By it
the jury were substantially told that although one might not
have the *actual* intent to injure, still if there is on his part
a reckless indifference or disregard of the natural or prob-
able consequences of doing or omitting to do an act, and he
does or fails to do the act, *conscious,* from his knowledge of
existing circumstances and conditions, *that his conduct will
likely or probably result in injury,* he is guilty of wanton
negligence. We see no prejudicial error in this statement.
(*Esrey* v. *Southern Pacific Co.,* 103 Cal. 541; *Everett* v.
*Los Angeles etc. Ry. Co.,* 115 Cal. 127; Beach on Contribu-
tory Negligence, secs. 55, 62.)

Defendant's objection to plaintiffs' instructions 5, 6, 7,
and 9 is, that they are predicated upon an alleged erroneous
theory of the law,—viz., that where the injured party's own
negligence brings him into danger, and defendant discovers
the danger in time to avoid ensuing injury by the exercise
of ordinary care, and fails to exercise such care, the defend-
ant is liable notwithstanding such negligence of the injured
party, if he, the injured party, *after* discovering his own

danger, exercises ordinary care to escape the injury. This, it is urged, relieved the injured party entirely from the consequences of his negligent failure *to discover his own danger* resulting from his own negligence. We see no force in the contention that the theory upon which it is said these instructions were predicated is erroneous. Such an instruction is applicable by its terms only in the event that the defendant discovers the negligent injured party *already in* a dangerous position, discovers him under such circumstances as preclude him from indulging in any assumption that he, the injured party, can or will get out of the way. It is only because of such discovery that he is called upon to exercise ordinary care to avoid injuring him. Upon such discovery, it is his plain duty to use ordinary care to avoid injuring the negligent party, and if he has a clear opportunity to avoid such injury,—i. e. "such an opportunity as would necessarily be clear and plain to a man of ordinary intelligence and prudence in a given emergency,"—and fails to take advantage thereof, he is liable for the injury, provided the other is not negligent after he discovers the danger. In such a case, he *who knows of the danger,* and recklessly proceeds regardless thereof, can find no refuge in the fact that the injured party who does not know of it would have known if he had used reasonable care to ascertain it. In such a case he *who knows of the danger and can avoid it, as against one who does not in fact know thereof,* has the last clear opportunity to avoid the accident. If a motorman should discover a man asleep on the track in front, and knowing him to be asleep, should proceed, regardless of his position and condition, and run over him with his car while still asleep, there would be very little question that the motorman had the last clear opportunity, and that his negligence was the proximate cause of the injury.

As said before, such a case has no feature in common with one where the circumstances are such that the defendant has the right to assume that the other party can and will protect himself, and, consequently, that he is not in a dangerous situation. There was no prejudicial error in the modification by the court of defendant's requested instruction 4. It was sought by this requested instruction to have the jury in-

structed that if the deceased was at the time of the race pro-
pelling his bicycle at a rate of speed in excess of eight miles
an hour, and did not look for an approaching car until it
was too late to bring his bicycle to a standstill so as to avoid
a collision, and did not at any time attempt to reduce the
speed of said bicycle before said collision occurred, he was
guilty of "gross" negligence. The court modified this by
adding, "or did not attempt to turn it out of the way of said
car before said collision occurred," as one of the prerequi-
sites of gross negligence on the part of the deceased.

The defendant was not entitled to have the instruction
given as requested. It is true that if deceased was riding
at a rate of speed in excess of eight miles per hour, he was
guilty of negligence as a matter of law, because of the city
ordinance prohibiting such speed. That, however, was a
matter fully covered by other instructions. Under the pecu-
liar facts of this case, it was for the jury to say, taking into
consideration all of the circumstances, whether a failure on
the part of deceased to look for an approaching car in time
to prevent a collision or a failure to attempt to reduce the
speed of the bicycle was negligence at all, much less "gross"
negligence, which term we suppose was used as an equiva-
lent of "willful or wanton" negligence. While it is true
that the modification, under the undisputed evidence, took
away the whole effect of the requested instruction, it did not
add anything prejudicial to defendant's case, and, as the
defendant was not entitled to the instruction at all, it cannot
complain of the modification.

Certain instructions of defendant, directing a verdict in
its favor if certain facts were found, were modified by add-
ing a proviso of this character, viz.: "Unless you shall also
find that the motorman in charge of defendant's car, *after
perceiving the dangerous situation then and there existing,*
did recklessly *or* wantonly send his car forward. Whether
or not such reckless or wanton conduct of the defendant did
occur and cause the collision, is a question of fact for you to
determine from the evidence, the same as you must deter-
mine other facts submitted." It is urged that these instruc-
tions make "recklessness" the equivalent of "wantonness,"
and that the terms are not synonymous. If one does a thing

recklessly, without regard to the rights of another, he comes within the terms of the very definition of "wanton" cited by learned counsel for defendant, and if one, perceiving the dangerous situation of another, proceeds recklessly without regard thereto, there is little room for the claim that he is not doing a thing "recklessly without regard to the rights of another." We can see no distinction between the terms as used in these instructions.

We find no prejudicial error in the modification of defendant's requested instructions 10, 12, 15, 18, and 27. By instructions given, the jury were instructed in as favorable terms as defendant could ask as to what constituted ordinary care, as to the obligation of the deceased to exercise such care for his own safety, and as to proximate cause, and further, in effect, that if they found that the collision was in any degree due to the want of proper care and caution on the part of deceased, and not to any intervening cause proceeding from the defendant, their verdict must be for defendant. The modification of the tenth requested instruction consisted entirely in the omission of matter which would have withdrawn from the jury all question as to the effect of the conduct of defendant after discovering the peril of deceased. The twelfth requested instruction was erroneous, in that it precluded a recovery by the plaintiffs if the jury found that if the deceased had exercised ordinary care to have discovered the danger, he would have discovered it in time to have avoided a collision, thus again withdrawing from the jury all consideration of the conduct of defendant after discovering the peril of deceased. The omission by the court of the words "and your verdict should be for defendant," which was the only modification made, was therefore not erroneous.

The portion of the fifteenth requested instruction that was omitted by the court was substantially covered by other instructions given.

The eighteenth requested instruction was erroneous, for the same reason as the tenth and twelfth, already noted. The requested instruction was to the effect that if the deceased by looking or listening with ordinary care might have discovered the car approaching, and did not exercise such care, he was guilty of such negligence as would prevent a recovery

by plaintiffs, and the modification by the court consisted in the addition of the words "as against any *ordinary* negligence of the defendant." This could not be understood, under the circumstances of this case and the other instructions, as importing any part of the doctrine of comparative negligence into the case. The words "ordinary negligence," as there used, plainly meant such negligence as might have existed on the part of defendant, in the absence of actual knowledge on its part of the perilous situation of the deceased, and a clear opportunity to avoid injuring him.

The twenty-seventh requested instruction was erroneous for the same reason as the tenth, twelfth, and eighteenth, and the modification thereof was proper.

Finally, it is claimed that the verdict is against law, in that it is contrary to an instruction wherein the jury were told that if they believed from the evidence that deceased approached the crossing where the accident occurred at a reckless rate of speed, without exercising any care or caution to ascertain whether any person was on or approaching the same, and that in consequence thereof the collision occurred, he was guilty of willful and wanton negligence, and their verdict must be for the defendant, notwithstanding any failure on the part of the motorman to exercise ordinary care.

In reply to this contention, it is sufficient to say that, in our judgment, the evidence was not such that the jury was bound to find that deceased approached said crossing without exercising any care or caution to ascertain whether any person was on or approaching the same, or that in consequence of such approach the collision occurred.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.