[Civ. No. 23033. Second Dist., Div. One. Nov. 28, 1958.]

JOHN CAWOG, Respondent, v. HARRY LEONARD ROTHBAUM et al., Appellants.

*Assigned by Chairman of Judicial Council.

Chase, Rotchford, Downen & Drukker, Hugh B. Rotchford and Otto M. Kaus for Appellants.

Hirson & Horn, Herbert L. Hirson, Theodore A. Horn, Philip F. Marantz, John Joseph Hall, Gustave L. Goldstein and Charles D. Munro for Respondent.

LILLIE, J.—Defendants appeal from a judgment in favor of plaintiff in a personal injury action. The matter was heard by a jury and a verdict of $7,500 resulted. Plaintiff's cause of action was based on negligence and wilful and wanton misconduct. Affirmative defenses raised by the answer were contributory negligence and assumption of risk.

Appellants claim the trial court erred: in the manner in which the jury was instructed on the last clear chance doctrine; in submitting the issue of wilful or wanton misconduct to the jury; in giving prejudicially repetitious instructions on wilful and wanton misconduct; and in instructing the jury that plaintiff's contributory fault was no defense to wilful or wanton misconduct.

Viewing the evidence and all inferences reasonably deducible therefrom in a light most favorable to respondent (*Crisci* v. *Sorci*, 115 Cal.App.2d 76 [251 P.2d 383] ; *Monastero* v. *Los Angeles Transit Co.*, 131 Cal.App.2d 156 [280 P.2d 187] ), the following are the pertinent facts leading to plaintiff's injuries:

On Saturday afternoon, plaintiff left the side exit of the Grand Central Market, stepped into a public alley and started walking west toward Hill Street. The alley is approximately 120 feet long and 10 feet wide, bounded on each side by buildings. It is so narrow that trucks traveling through it almost completely occupy the width. It is customarily used by both pedestrians (especially on Saturdays) and trucks. The curbs on each side, 12 inches wide on the north and 4 inches on the south, are not used as sidewalks, but only to keep the trucks from scraping the buildings. A pipe 6½ inches in diameter juts out of the north wall and runs along the side about waist high.

Plaintiff, carrying two shopping bags, had walked one-third of the way into the alley when he saw defendant, driving a 1947 Ford 1½ ton truck with stake body, turn into the alley 80 or 90 feet ahead. Defendant was approaching plaintiff, going about 5 miles per hour. The cab of the truck was approximately 6 feet wide; the stake body an inch or two wider than 7 feet.

Defendant, whose place of business was near, was familiar with the alley, having walked in it as a pedestrian and fre-

quently driven his truck in and out since October, 1955. He knew the alley was used by pedestrians. He also knew of the 6½ inch pipe running along the north wall; that the width of the alley was approximately 10 feet and the total clearance between the truck and the walls was about three feet overall, including the clearance on both sides of the truck.

The testimony of police and both parties discloses that it was customary for a truck entering the alley to stop to permit a pedestrian either to turn and walk back, or walk around it. It was not a frequent occurrence for a truck to drive by while a pedestrian was standing on the curb or try to squeeze by a pedestrian.

When defendant turned into the alley, he saw plaintiff, approximately 80 or 90 feet away, one-third into the alley, walking toward him. Defendant, going approximately 5 miles per hour, had his foot on the brake to prevent an increase in speed downgrade. He could have easily stopped his truck at any time before reaching plaintiff, but chose to continue. As he bore down on him, plaintiff "hollered" at defendant as loud as he could, "Hey. Hey," and raised both hands with the shopping bags to attract his attention, but the truck continued forward. Although defendant continuously watched plaintiff after he turned into the alley and during this time had his foot on the brake, he neither applied his brakes, slowed down, nor attempted to stop. As defendant proceeded down the alley toward plaintiff, the distance between the left side of the body of the truck and the north wall was less than 18 inches. Plaintiff had no chance to retreat by outrunning the truck, which was going about twice as fast as he was walking, or to go any place other than the curb. When he realized defendant did not intend to stop, plaintiff dropped his shopping bags and jumped up onto the north curb. Standing there, he flattened himself against the wall with arms outstretched clutching the top of the 6½ inch pipe, with his right hand on the top of the pipe and his left arm on the wall and pipe in a manner plaintiff demonstrated to the jury. Since the pipe protruded from the wall about 6½ inches, there were between plaintiff and the truck approximately 11½ inches.

Watching plaintiff, defendant saw the cab of the truck start past him, then turned his head and did not observe plaintiff until after the impact. The cab passed plaintiff, but the

stake body did not clear him. Plaintiff did not move from his position against the wall until after he was twice struck by the truck, on the right forearm and right hip, and fell to the ground. When defendant heard plaintiff yell after the impact, he for the first time applied his brakes and came to a stop within three feet. Plaintiff suffered a fracture of the pelvis and a broken right arm.

In support of their contention that the trial court instructed the jury on the doctrine of the last clear chance in such a way that it became a formula instruction and ignored evidence of contributory negligence with respect to which defendant did not have the last clear chance, appellants argue that plaintiff's contributory negligence arose, first, out of his failure to retreat out of defendant's way and, later, out of some movement plaintiff made while on the curb which brought his arm in contact with the truck, all of which "directly and immediately caused the injuries complained of." Citing *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432], they urge there is no room for the application of the doctrine of last clear chance unless the defendant, with knowledge that plaintiff is in a position of peril, and with actual or constructive knowledge that plaintiff cannot escape therefrom, *thereafter* has the last clear chance to avoid the accident by the exercise of ordinary care, but fails to do so and the accident occurred as a proximate result thereof.

Conceding that the giving of instructions on the last clear chance was proper appellants contend that, since the instruction in question advised the jury that in the event the doctrine applied plaintiff would be entitled to a verdict, it constituted a formula instruction.

This argument has no basis in law or in fact in the instant case. In the very beginning of the instruction of which appellants complain, the jury was admonished that it could not apply the doctrine unless it first found from the evidence the presence of certain elements. It is clear that there is nothing in the instruction which would prevent the jury from finding, if it so believed, that defendant did not have the last clear chance to avoid the accident by the exercise of ordinary care because plaintiff was negligent in turning into the truck and the accident occurred as the proximate result thereof; and nothing therein to preclude it from refusing to apply the doctrine to prevent plaintiff's recovery.

The instruction did no more than instruct the jury in

language substantially approved by the court in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432]. A regular BAJI instruction, it reads: "If, and only if you find by a preponderance of the evidence (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure, then in that event the doctrine of last clear chance would apply, and the plaintiff would be entitled to a verdict in his favor."

Under this instruction, the jury was free to make its own findings and, if it could not find in the evidence the necessary elements justifying application of the doctrine, it was admonished to reject it. Under subdivision (3) therein, if the jury believed that after placing himself in a position of danger plaintiff, and not defendant, was the one who had the last chance to avoid the accident (by not moving as to contact the truck), it was instructed not to apply the doctrine.

As an additional safeguard, the lower court, at the request of appellants, gave a separate cautionary and explanatory instruction, not in issue, wherein the jury was properly and thoroughly charged on the relation of the doctrine to negligence, proximate cause and contributory negligence and admonished that the last clear chance provides no exception to the basic principle that liability must be founded on both negligence and proximate cause; that it does not set aside the law of contributory negligence and that it will defeat the defense of contributory negligence only when, after plaintiff's negligence has put him in a position of danger, "its work as an efficient agent of causation ceases, and it does not play a part in proximately causing the accident." It declared further that when plaintiff's "negligence not only places him in a position of danger, but thereafter it or its effect continues so as to be a proximate cause of and to help to bring about, the accident, then the law of contributory negligence applies, and such person may not recover."

As pointed out by respondent, the same contention was ad-

vanced and rejected in *Connolly* v. *Pre-Mixed Concrete Co.*, 49 Cal.2d 483 [319 P.2d 343], a case factually closely analogous. Plaintiff was riding a horse in a narrow street and defendant driver of a truck, knowing of her peril, could easily have stopped. Pleading contributory negligence, he argued that the doctrine of last clear chance was inapplicable because plaintiff could have dismounted before the collision, but having failed to do so, knowing her horse became frightened by moving vehicles, she continued on and when the truck passed her horse whirled around, at which time it was too late for the defendant to avoid the accident. Appellant contended that the action of plaintiff's horse after she failed to dismount and retreat made the doctrine of last clear chance inapplicable; and that the giving of the instruction following the last clear chance formula, restated in the Brandelius case, was error. On this the court said, at page 487: "The record, however, does not compel such a conclusion as a matter of law. Whether plaintiff had the asserted ability to extricate herself from her position of danger by dismounting, whether it would have been more dangerous for her to attempt to dismount from a frightened horse as the truck approached, whether Stevens (the driver) knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape from her peril, and whether he thereafter had a clear chance to avoid the accident by the exercise of ordinary care, were all questions of fact for the jury which heard the evidence and viewed the terrain at the scene of the accident. The giving of the instruction, therefore, was not error."

Appellants' argument is one which should have been made to the trier of fact, actually was made to the jury in detail, and rejected. It did not accept appellants' interpretation of the evidence that, when the body of the truck started to pass plaintiff as he stood on the curb, a new act of negligence occurred in which "somehow, his right forearm came in contact with the truck and was fractured"; that he "*must* have" turned into the truck, directly and immediately causing the injuries complained of; and the doctrine of last clear chance is not applicable to "the negligence of plaintiff embodied in that sudden and ill-advised movement." (Emphasis added.)

 Without question, defendant was negligent. The record does contain sufficient evidence from which the jury could have found plaintiff negligent in failing to retreat when he first perceived the defendant, but the jury was fully justified in finding that after he jumped upon the curb

and assumed his position of danger, of which defendant was well aware, plaintiff then was free of any negligence proximately contributing to his injuries. Whether defendant knew or should have known plaintiff was in peril and unable to escape—whether thereafter defendant had a clear chance to avoid the accident by exercising ordinary care and failed to do so—whether plaintiff thereafter moved his arm into the truck—or if he did, whether he was negligent—were all questions of fact for the jury which heard the evidence and saw the witnesses, observed the size and age of plaintiff and his demonstration of his position against the wall, and saw the diagram and position of each party at various times.

Appellants' entire argument is predicated on the theory that "plaintiff must have turned into the truck just as it was passing him." We find little or no evidence in the record to support such a finding. Plaintiff repeatedly testified he did not move until after he was twice struck, and demonstrated how he stood clinging to the wall. At only one place in the record, and then on cross-examination of plaintiff, was there any suggestion that plaintiff moved before the truck hit him. In view of the record, we are inclined to believe his statement in that regard was due to his language difficulty because immediately thereafter, and still on cross-examination, he denied that he moved before he was struck, as he had throughout the entire trial.

The injury to his right arm no more necessarily implies plaintiff turned into the truck, as urged by appellants, than that it was due to the impact when he was crushed against the wall and pipe, or to the forced contact of the stake body of the truck, or to his fall to the pavement after the impact. No one except plaintiff saw the actual contact. Appellants' assumption of what "must have" happened is based purely upon speculation and conjecture. Nor does the evidence support appellants' assumption that the truck having "started to pass him successfully" defendant had sufficient clearance to get entirely past plaintiff. The record shows the alley was 10 feet wide, the cab of the truck 6 feet wide and the stake body in excess of 7 feet, leaving an average clearance on each side of less than 18 inches, less 6½ inches for the pipe on the north wall at the point of impact. This reduced the space for plaintiff's body to 11½ inches at the point of impact. If the body of the truck swayed, or defendant deviated from the middle course, the 11½ inches would

be further diminished. In view of these circumstances, the fact that the cab safely passed plaintiff's body is no proof that there was sufficient clearance for the passage of the body of the truck in excess of one foot wider.

The suggestion that any slight movement plaintiff might have made while clinging to the wall was negligence is unrealistic and ignores the natural propensity of a person in a position of peril and fright not to remain immobile.

We conclude that, under the instruction of which appellants complain, the jury could have found either that plaintiff was negligent and thereafter defendant had a last clear chance to avoid the injury, or that he did not have the last clear chance because plaintiff was negligent in turning into the truck; that the giving of the instruction was not error; and that the implied finding that plaintiff committed no negligent act while on the curb and that defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to do so, and that the accident occurred as the proximate result thereof, was justified by the evidence.

In support of their second contention that the court erred in submitting the issue of wilful misconduct to the jury, appellants argue that at most the evidence shows only negligence, which by "passionate arguments" could be and was made to appear wilful. Rejecting defendant's conduct as wilful and wanton, they concede only that "it would have been wiser to stop," that defendant "perhaps took a rather foolish chance" and was "too impatient to get to work."

The record discloses ample evidence of defendant's knowledge that serious injury would probably result from his actions, and of a wanton and reckless disregard of possible results, going far beyond not only negligence but gross negligence. Defendant was familiar with the alley, having traversed it many times on foot and by truck, knew its width and that of the truck, and that pedestrians used it. When he first saw plaintiff 80 or 90 feet away, he was driving 5 miles per hour with his foot on the brake and could have easily stopped. Plaintiff "hollered" and raised his hands with his shopping bags, and defendant, watching him continuously, saw him jump on the curb and assume his perilous position. Defendant knew of the presence of the pipe, the width of the space and observed the general stout build and age of plaintiff, yet he ignored plaintiff's predicament and continued toward him, neither stopping nor slowing; and in an effort to pass him,

compelled plaintiff to take the chance of injury. Heedless of plaintiff's obvious plight and indifferent to the serious consequences that were probable to result, he drove on. Under the concededly proper definition of wilful or wanton misconduct given to the jury at appellants' request, the record before us reveals ample evidence to constitute a jury question on the issue of wilful or wanton misconduct.

As to what constitutes wilful or wanton misconduct, we have been referred to three cases factually similar to the one at bar. *Esrey* v. *Southern Pacific Co.*, 103 Cal. 541 [37 P. 500], involved a pedestrian and a moving train in which the clearance was only 14 inches. The court assuming Mrs. Esrey to be negligent in getting into the perilous position, and finding that defendant, aware of her peril, failed to exercise ordinary care by stopping the train although there was ample opportunity to do so, held: ''. . . that a failure to exercise ordinary care by a defendant under such circumstances amounts to a degree of reckless conduct that may well be termed willful and wanton; . . .'' (103 Cal., pp. 544-545). In *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal.App. 551 [186 P. 800], plaintiff sat on a steam roller with his legs hanging over the side. Defendant, driving a baggage truck not over 6 or 7 miles per hour, attempted to pass in front of the steam roller, crushing plaintiff's leg. After declaring that defendant's conduct in cutting so closely to the steam roller ''can hardly be said to be allowing sufficient space for safety'' and severely condemning him for ''trying to make a close pass,'' the court described defendant's conduct to be ''reckless, willful and wanton.'' (44 Cal.App. 556, 557.) The deceased in *Harrington* v. *Los Angeles Railway Co.*, 140 Cal. 514 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A. 238], riding a bicycle at excessive speed, approached defendant's tracks, collided with its street car and was killed. Defendant was traveling 2½ to 4 miles per hour. Twenty or 25 feet away he saw deceased and could have easily stopped, but pushed his street car forward. The court found there was ample evidence to justify the finding that the motorman knew of deceased's perilous position and could have in the exercise of ordinary care avoided injury to him, and held defendant liable on the theory of last clear chance and by reason of his wilful and wanton conduct.

■ Appellants complain that the trial court unduly emphasized the subject of wilful or wanton misconduct, thereby indicating to the jury its belief in the correctness of the charge. Recognizing the holding in *Faeh* v. *Union Oil Co.*, 107 Cal.

App.2d 163 [236 P.2d 667], that mere repetition of instructions does not constitute reversible error, they submit that the question depends on the circumstances of each particular case. (*Taha* v. *Finegold*, 81 Cal.App.2d 536 [184 P.2d 533].) Basing their argument on the fact that there was no evidence in the record to substantiate the charge of wilful misconduct, and the court defined wilful and wanton misconduct three times, appellants claim prejudice resulted.

The court in *Faeh* v. *Union Oil Co.*, 107 Cal.App.2d 163 [236 P.2d 667], distinguished *Taha* v. *Finegold*, *supra*, as follows: "In the Taha case 16 instructions, almost duplicates were given; 11 formula instructions, the cumulative effect of which, with other circumstances, induced the jury to return a verdict for plaintiff (sic). Such is not the situation here." As in *Faeh* v. *Union Oil Co.*, *supra*, only three instructions on the same subject were given in the instant case and, in addition, the court gave two cautionary instructions admonishing the jury to disregard any seeming opinion or inclination of the trial judge.

Part of appellants' argument is predicated on the fact that the instructions served no useful purpose. We have hereinbefore answered this by concluding that there is ample evidence of wilful and wanton misconduct in the record. Under the evidence before us and the trial court's admonitions, the mere repetition of the definition of wilful or wanton misconduct by three short, different, although proper, instructions did not prejudice appellants.

In their last contention that the trial court erred in instructing the jury that contributory negligence and assumption of risk are not defenses to a charge of wilful or wanton misconduct, appellants use the term "contributory fault" to denote both the defense of contributory negligence and the assumption of risk, between which they make no distinction.

Relying primarily upon *Bickford* v. *Pacific Elec. Ry. Co.*, 120 Cal.App. 542 [8 P.2d 186], and a line of guest-host personal injury cases arising out of automobile accidents, starting with *Schneider* v. *Brecht*, 6 Cal.App.2d 379 [44 P.2d 662], appellants argue that contributory negligence is a defense to a charge of wilful or wanton misconduct. The holding in *Bickford* v. *Pacific Elec. Ry. Co.*, 120 Cal.App. 542, 550, 559 [8 P.2d 186], that "gross negligence" as defined in one of the instructions as the equivalent of "wantonness" was not a bar to the defense of contributory negligence, is not applicable in the instant case in view of the instructions given herein defin-

ing wilful or wanton conduct, which are concededly proper and not under attack, and which rule out gross negligence as being any part of wanton or wilful conduct. The main definition which was requested by appellants and given by the court provides in part that wilful or wanton conduct "must be an act done under circumstances which show either knowledge that serious injury will probably result or a wanton and reckless disregard of possible results" and "something more than mere negligence and even more than gross negligence."

Respondent relies on a line of recognized authorities starting with *Esrey* v. *Southern Pac. Co.*, 103 Cal. 541 [37 P. 500], which clearly reveals that the type of wanton or wilful misconduct found in the record before us is a bar to the defense of contributory fault. These authorities do not disturb the holdings in the guest-host automobile cases involving actions between parties who occupy a special relationship with each other. Even in those cases the defenses of contributory negligence and assumption of risk appear to have been permitted only where plaintiff's conduct was an inducing cause of defendant's conduct, or where the plaintiff had, by comparable conduct, participated in the defendant's conduct. These special limitations on the right of a guest to recover are doubtless the result of the ease with which fraudulent or collusive claims can be made by a guest against his host, with whom he is generally on friendly terms.

In the instant case the action is not between two persons who occupy any special relationship with each other, but between parties who are strangers; and in cases of this kind the courts have long recognized the distinction between negligence and wanton or wilful misconduct and that, where the latter exists, the defendant cannot avail himself of the defense of contributory fault. Beginning with *Esrey* v. *Southern Pac. Co.*, 103 Cal. 541 [37 P. 500], defining wanton and wilful misconduct, and holding that contributory negligence is no defense thereto, these authorities present factual situations between strangers analogous to that in the case at bar. After characterizing defendant's failure to exercise ordinary care as amounting to a "degree of reckless conduct that may well be termed willful and wanton"; the court held that "when an act is done wilfully and wantonly, contributory negligence upon the part of the person injured is not an element which will defeat recovery. (102 Cal. 544.) This case was followed and approved in *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A.

238], which, as in the instant case, involved both the elements of last clear chance and wanton misconduct, and which affirmed the plaintiff's verdict on either or both theories. In considering whether contributory negligence of the deceased was a valid defense, the court said, citing the Esrey case, at page 523: "In either case the liability would exist, for where an act is done wilfully and wantonly, contributory negligence upon the part of the injured person is no bar to a recovery."

On the issue of intentional and wilful misconduct the court, in *Tognazzini* v. *Freeman*, 18 Cal.App. 468, said at page 476 [123 P. 540] : ". . . the plaintiff's cause of action having been stated solely upon the willful, wrongful act of the defendants, the doctrine of contributory negligence has no application to any phase of the case." *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal.App. 551 [186 P. 800], similar in principle and on its facts to the instant case, likewise involved an attempt "to make a close pass." At page 557, the court stated: "In our opinion the record in this case discloses the negligence of defendant's driver to be so great as to bring it within the purview of the cases where no defense of contributory negligence can be urged. It seems to us 'reckless, willful and wanton.' "

*Donnelly* v. *Southern Pac. Co.*, 18 Cal.2d 863 [118 P.2d 465], cited by both parties, discussed the meaning of the terms "wanton misconduct," "wilful misconduct," and "negligence" in relation to each other, and stated, at pages 869-870: "Wanton and reckless misconduct is more closely akin to willful misconduct than to negligence, and it has most of the legal consequences of willful misconduct. Thus it justifies an award of punitive damages, and contributory negligence by the plaintiff is not a defense."

Our attention has been called to two recent out-of-state cases, *Adkisson* v. *City of Seattle* (1953), 42 Wn.2d 676 [258 P.2d 461], and *Falls* v. *Mortensen* (1956), 207 Ore. 130 [295 P.2d 182]. A discussion of the facts of these cases will serve no useful purpose but they both disclose wanton misconduct on the part of defendant. In the Adkisson case, the court reversed the lower court for failing to instruct the jury on the issue of wanton misconduct. After pointing out the difference between wanton misconduct and negligence, it said at page 465 [258 P.2d] : "Since neither wilful nor wanton misconduct arises out of negligence, the contributory negligence of the plaintiff is no defense to an action based on the defendant's wilful or wanton misconduct." The court in the Falls case,

in which the defense of contributory negligence was urged, relying on and quoting from the Donnelly case, said at page 186 [295 P.2d] : "We find the weight of authority supports the definitions of wanton misconduct which we have set forth *supra.* Such misconduct is different in kind and not merely in degree from negligence ordinary or gross. One guilty of wanton misconduct is subject to liability which is greater in scope than that which applies to negligent persons and contributory negligence is generally held to constitute no defense."

Appellants reject the applicability of the line of authority hereinabove cited for a variety of reasons—that what a court may have called wilful or wanton conduct a half century ago is "not necessarily the same thing as wilful or wanton misconduct as defined by the trial court in the present case"; that some of the cases also involve the doctrine of the last clear chance; that the "terms 'negligence' and 'wilfulness' have been confusedly and indiscriminately used by the judges"; and besides, if this court followed them, it "would destroy the doctrine of contributory negligence and establish comparative negligence in this state."

Considering the principles set forth in the line of authorities mentioned, even in the light of appellants' objections, and their obvious recognition today by the courts, both in this state and outside of California, we believe them to be as sound now as the day of the court's pronouncements.

Appellants argue that to hold that contributory fault is no defense to an action for wilful misconduct is diametrically opposed to sections 3517, 1714, Civil Code. Section 1714 reads in part as follows : "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." A careful reading of this section reveals that as to those wrongs which are in the nature of wilful acts committed by a defendant, the injured person can only be barred by similar wilful conduct on his own part which is a proximate cause of his injuries and cannot be barred as to such wilful torts by mere want of ordinary care on his part.

We conclude from the record before us that the verdict is fully sustained by the evidence on the theory of last clear chance, and on the proposition that defendant was guilty of

wilful and wanton conduct, to which contributory fault is no defense. We find no prejudicial error in connection with either issue.

For the foregoing reasons the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 22, 1958, and appellants' petition for a hearing by the Supreme Court was denied January 21, 1959.