[Civ. No. 4309.  Second Appellate District, Division One.—December 21, 1923.]

A. ALICE LANGDON et al., Petitioners, v. SUPERIOR COURT OF RIVERSIDE COUNTY et al., Respondents.

[1] JURIES AND JURORS—USURPATION OF FUNCTIONS BY TRIAL JUDGE —CERTIORARI.—In an action for damages arising out of a collision between two automobiles, where the trial judge, by means of thinly veiled threats and by intimidation, coerces the jury into returning a verdict to which otherwise it would not have agreed, the functions of the jury in determining the facts of the case are thereby usurped; and *certiorari* will lie to review such action.

PROCEEDING in Certiorari to review the action of the Superior Court of Riverside County, William H. Ellis, Judge, in directing a verdict in an action for damages. Verdict annulled.

The facts are stated in the opinion of the court.

Haas & Dunnigan for Petitioners.

Sarau & Thompson for Respondents.

HOUSER, J.—*Certiorari.*  The purpose of this proceeding is to review the action of the superior court in a case appealed thereto from the justice's court. From a judgment rendered in a cause of action for damages arising out of a collision between two automobiles, the unsuccessful party to the action appealed to the superior court. In the course of the trial before a jury in the superior court, it was stipulated that there was expended by the plaintiff for repairs upon its automobile the sum of $248.32.  No further stipulation with

reference thereto was entered into between the respective
parties either personally or by their counsel. The jury was
instructed that if it found for the plaintiff, damages should
not exceed $248.32. After some deliberation the jury re-
turned a verdict for the plaintiff in the sum of one dollar.
By the direction of the court the clerk of the court en-
tered the verdict. Thereupon counsel for plaintiff moved
the court "to direct the jury that, having found for plain-
tiff, their verdict must be in the sum of $248.32, for the
reason that that was the stipulation made between counsel
during the trial of this case." Over the objection of de-
fendants' counsel and against the protest of the jury, the
court granted the motion and directed the jury to return
a verdict in the sum of $248.32. Judgment was entered on
the verdict, and a motion for a new trial was denied. The
colloquy among the judge, the respective attorneys and sev-
eral members of the jury leading up to the rendition of the
final verdict was somewhat extended and is too long to be
here inserted; but it clearly appears therefrom that in no
uncertain terms was the jury peremptorily ordered to so
change the verdict that instead of the damages in favor of
plaintiff being the sum of one dollar they should be for
the sum of $248.32; that different members of the jury
explained to the judge that the original verdict for plain-
tiff in the sum of one dollar "was rendered as a com-
promise measure"; that they "finally agreed upon a
compromise verdict, but they were not willing to agree for
the whole amount"; and that "several of the jurors agreed
to vote for the plaintiff on condition that the sum be fixed
according to the judgment of the jury, for one dollar";
that the jury requested leave to recall the verdict in favor
of plaintiff for one dollar in order that they might more
fully consider the question of alleged contributory negli-
gence of plaintiff and, if so determined, render a verdict
for defendants, or otherwise alter the verdict; but the judge
refused to decide what their powers were in that regard.

The attitude of the court is illustrated by the following
excerpts from the transcript of the court reporter's notes
on the proceedings:

"The court will direct you to go back. The court is go-
ing out for his dinner, but I will wait for you here five
minutes. . . .

"But the court just told them to do it (bring in a verdict for $248.32). Now, if the court has no authority or power here, then of course we might as well shut up shop here. . . .

"The law tells the court what he may do when persons will not obey the order of the court. . . .

"The court has told them to go back and bring in a verdict for $248.32. Why don't you do it?"

And as a final admonition, "when I issue an order directing a verdict, you cannot get away from it, if you will observe your oath; that is all there is to it."

[1] It will thus be seen that by means of thinly veiled threats and by intimidation the jury was coerced into returning a verdict to which otherwise it would not have agreed. The functions of the jury in determining the facts of the case were usurped by the judge. The verdict purporting to be that of the jury was not at all of its volition, but represented only the express order of the court; the so-called verdict of the jury was in reality but a "verdict" by the judge.

While *certiorari* will not lie for the correction of mere error, the action of the court in the instant case amounted to a great deal more than that. It deprived the defendants of their constitutional right under the law to a jury trial; it took away from the jury every freedom of action and converted it into nothing more than a piece of legal machinery, useful only for the one purpose of fashioning its output under the hand and direction of the master mechanic. The one great power of the jury was absolutely destroyed; not a vestige of its power remained; there was a total obliteration of any authority which it lawfully possessed. The natural and only possible result was the destruction of defendants' fundamental rights by a process of law not countenanced by authority or legal precedent. Such an attempted encroachment by one arm of the judicial department upon the guaranteed prerogatives of another member thereof, if permitted as a precedent in the administration of justice, might lead to disastrous consequences. As well might the jury assume judicial powers to the exclusion of the judge therefrom, as for the judge to usurp the functions of the jury in its right to pass upon questions of fact. An innovation of that character would

threaten the very foundations of our institutions and present a positive menace which in the exercise of diligent foresight ought to be quashed at its very inception. The judge sitting with a jury has plenary rights with reference to the orderly conduct of the case on trial, including the duty of declaring the law applicable to the facts and the legal effect thereof; but in no circumstances, in litigation of the character here in question, has the judge any warrant in the law for a substitution of his personal opinion for that of the jury, nor lawful authority to compel action by the jury as against its judgment. The operation by which the jury was compelled to abdicate the rightful exercise of its historic functions was an excess of power by the judge; the jurisdiction of the court was overreached; and a judgment was thereby rendered which was of no force or effect. "Any departure from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure, which has the effect to deprive one of a constitutional right, is as much an excess of jurisdiction as where there exists an inceptive lack of power." (*McClatchy* v. *Superior Court,* 119 Cal. 413 [39 L. R. A. 691, 51 Pac. 696]; *Schwarz* v. *Superior Court,* 111 Cal. 112 [43 Pac. 580]; *Tomsky* v. *Superior Court,* 131 Cal. 620 [63 Pac. 1020]; *Younger* v. *Superior Court,* 136 Cal. 682 [69 Pac. 485]. See, also, *People* v. *Lee Yune Chong,* 94 Cal. 379 [29 Pac. 776].)

It is ordered that the judgment entered in said superior court on the verdict in favor of plaintiff in said action be and the same is annulled.

Conrey, P. J., and Curtis, J., concurred.