[L. A. No. 8452. In Bank.—December 29, 1926.]

REDO Y CIA (a Copartnership, etc.), Appellant, v. FIRST NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent.

[1] JURY TRIALS—DIRECTED VERDICTS—POWER OF COURT.—While the trial judge may not interfere with or control the jury in passing upon the evidence, he nevertheless exercises a salutary supervisory power over their verdict; and it is the province and duty of the court to instruct the jury upon the law, and such instructions are binding on the latter in its deliberations.

[2] ID.—TENDER OF VERDICT—EXCESS OF LEGAL LIABILITY—POWER OF COURT.—Where a jury tenders a verdict for an amount in excess of the lawful limit of liability on the part of the defendant, in

1. See 24 Cal. Jur. 794.
2. See 24 Cal. Jur. 897.

violation of the court's instructions, the court has the right to refuse to receive the verdict, and a change in the verdict to come within the limit of legal liability constitutes an amendment which can properly be made before the verdict is recorded and prior to the discharge of the jury; and the fact that such amendment was made by the jury under compulsion of the court is not significant, as the jurors are not at liberty to refuse obedience to the court's instructions on matters of law, any error of the court in its instructions being reviewable on appeal.

[3] ID.—REFUSAL TO POLL JURY—LACK OF PREJUDICE.—Assuming that error is committed by a trial court in refusing a party's request for a poll of the jury, no prejudice results therefrom, where it appears that all the jurors were in favor of a verdict for the party and so announced themselves on the return of the verdict that was recorded.

[4] BILLS OF EXCHANGE—DISHONOR OF BILLS—WAIVER OF PROTEST—IMPLIED FINDINGS.—In an action to recover a certain sum paid by plaintiff to defendant bank for foreign bills of exchange, by returning a verdict favorable to the plaintiff, the jury impliedly determined that the evidence in the case was sufficient to show a dishonor of the bills of exchange by the drawee bank and a waiver by the drawer bank of the formality of protest.

[5] ID. — MEASURE OF DAMAGES — LAW APPLICABLE. — In such a case, where the bills of exchange antedated the adoption by this state of the Uniform Negotiable Instruments Law, the measure of damages recoverable from the drawer upon dishonor must be found in the law in effect prior to the adoption of the former law.

[6] ID.—SECTIONS 3234 TO 3239, CIVIL CODE—CONSTRUCTION.—Under sections 3234 to 3239 of the Civil Code, the amount recoverable upon the dishonor of bills of exchange by a foreign drawee is the value of the foreign money in which the bills of exchange were expressed, at the time the bills were presented to the foreign drawee for payment, together with damages of fifteen dollars upon each one hundred dollars thereof and interest on the total from the time payment was demanded of the drawer; and in an action to recover upon such bills the court did not err in confining plaintiff's recovery to that amount.

(1) 38 Cyc., p. 1595, n. 90, p. 1891, n. 65, p. 1894, n. 92, p. 1898, n. 15.   (2) 38 Cyc., p. 1891, n. 65, 68, p. 1895, n. 96 New.   (3) 4 C. J., p. 1055, n. 47 New.   (4) 3 C. J., p. 1338, n. 26; 7 C. J., p. 593, n. 74 New.   (5) 7 C. J., p. 593, n. 74 New.   (6) 7 C. J., p. 593, n. 74 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mott & Vallee for Appellant.

Flint, MacKay & Bowen for Respondent.

SHENK, J.—Plaintiff instituted this action to recover $14,200 paid by it to the defendant bank for two foreign bills of exchange drawn by the defendant on the Deutsche Bank of Hamburg, Germany, each being for 40,000 marks.

The plaintiff firm was engaged in the sugar business in Mexico and maintained an office in the city of Los Angeles. In the conduct of its business plaintiff maintained an account with Bartning Gebruder of Hamburg, Germany. On March 22, 1917, plaintiff's Los Angeles manager inquired of the defendant bank the exchange rate on a draft for 40,000 German marks. The defendant bank thereupon wired its correspondent, the Crocker National Bank of San Francisco, and secured from it the rate of exchange, together with its consent to effect the sale. Thereafter and on March 23, 1917, the plaintiff, through its Los Angeles manager, purchased the first bill of exchange for 40,000 marks from the defendant bank. This bill of exchange was drawn on the above-named German bank and was payable to the plaintiff in marks. At the then prevailing rate of exchange the plaintiff paid $6,920 therefor—the exchange rate of each mark being 17.3 cents. On the same day the defendant notified the Crocker Bank of the issuance of the bill of exchange.

The Crocker Bank had an arrangement with the Deutsche Bank Filiale of Hamburg, Germany, dating from the year 1911, under which the latter honored and paid bills of exchange of the former bank and its correspondents to the extent of 500,000 marks at any time, without previous advice or the deposit of funds.

On April 2, 1917, the plaintiff, through its manager, purchased of the defendant bank a second bill of exchange for 40,000 marks similar to the first and paid therefor the sum of $7,280. Upon payment being made each of said bills was delivered by the defendant to the plaintiff's manager. The amount paid for said two bills of exchange totaled $14,200, the sum sued for herein, of which amount the de-

fendant asserts it retained $25 as commission and then remitted the remainder to the Crocker Bank.

A state of war was declared to exist between the United States and Germany on April 6, 1917, and mail service between the two countries was officially discontinued on the following day. Prior thereto the Crocker Bank had addressed and mailed to the Hamburg Bank a separate advice of each draft, both of which were received by the latter bank. Subsequent advices mailed by the defendant bank to the Hamburg Bank were returned marked "Mail service suspended to country addressed." This information was apparently conveyed to the Crocker Bank by the defendant. The continued existence of a state of war between this country and Germany prevented the plaintiff for a considerable period from sending the two drafts to the latter country by mail. Hostilities were terminated on November 11, 1918, by the signing of the armistice, and on July 15, 1919, mail service and commercial transactions between the two countries were resumed. Approximately one month later, August 14, 1919, plaintiff's Los Angeles manager mailed the two bills of exchange to the home office in Mexico for indorsement to Bartning Gebruder, Germany, together with instructions for their forwarding. The bills were inclosed in a letter bearing date August 20, 1919, and addressed to the indorsee in Germany.

Subsequent to the restoration of peace conditions and the resumption of business relations with Germany the Crocker Bank effected a new credit arrangement with the Hamburg Bank, being known as the *new* account, the previous arrangement thereafter being referred to as the *old* account. No change had apparently been made in the arrangement, however. The bills of exchange were presented by the indorsee to the Hamburg Bank on September 24, 1919, whereupon the latter cabled the Crocker Bank and inquired if they might be paid from the *new* account, together with "all old drafts." In reply thereto the Crocker Bank cabled to ascertain the status of the *old* account and to learn "why above drafts cannot be charged against same." On October 1, 1919, the Hamburg Bank cabled the Crocker Bank to the effect that at the close of business the old account had a balance of 100,000 marks, but that "according peace condi-

tions you cannot dispose against same." The Crocker Bank addressed a letter bearing date November 6, 1919, to the Hamburg Bank "regarding the matter of paying drafts drawn against our old account to the debit of our new account, and would thank you to hold this matter in abeyance for the time being, advising us, however, when our old account is again at our disposal." Other correspondence passed between the Crocker Bank and the Hamburg Bank relative to the status of the old and new accounts and the payment of the bills of exchange. The bills here involved were never protested, but, after being held for a time by the indorsee, were returned to the plaintiff at Los Angeles. This action to recover the amount paid for said bills of exchange grew out of the return thereof.

Among other things the trial court instructed the jury that laches was not chargeable to the plaintiff nor was the defendant bank relieved of any liability by reason of any delay in the presentation of the drafts to the Hamburg Bank occasioned by the existence of a state of war between the United States and Germany, and that it was the duty of the jury to determine whether the defendant bank had waived protest of the drafts. The jury was further instructed that should it determine that the plaintiff was entitled to recover, such recovery would and should be limited to the value of 80,000 marks in United States money on September 24, 1919, the date of presentment to the drawee, or $3,600; that in addition thereto the plaintiff would be entitled to damages of $15 on each $100 thereof, or $540, together with interest on $4,140—the total of the principal sum and damages—from the date of demand made by plaintiff on the defendant, which date was to be determined by the jury.

After deliberating the jury returned a verdict in favor of the plaintiff in the sum of $14,200—the full amount paid by it for the bills of exchange. The verdict was passed to the court and it declared that "The court cannot accept that verdict. I told you what the extreme amount was that you could find. That is all there is to it. You will retire again." Considerable discussion thereupon ensued between the court and individual jurors and the court again instructed them that they could award no more than $4,140 and interest thereon to the plaintiff. The jury again retired and brought

in a verdict in accordance with the court's instructions and judgment thereon was duly entered.

Plaintiff urges as a first ground of appeal that the court erred in declining to receive and record the first verdict brought in by the jury. Appellant contends that "the court was bound in law to receive the first verdict rendered by the jury. It could thereafter, on motion, set it aside and order a new trial, but it had no power to compel the jury to render a verdict different in substance." We cannot uphold this contention. In its instructions the trial court informed the jury that in the event they found or concluded that appellant was entitled to recover from the respondent, such recovery was to be for $4,140, together with interest. The jurors entirely disregarded the law as set forth in the court's instructions and brought in a verdict opposed thereto. In our opinion the lower court very properly declined to accept such a verdict and acted within its province when it instructed the jury to again retire and bring in a verdict in conformity with the instructions. [1] While the trial judge may not interfere with or control the jury in passing upon the evidence, he nevertheless exercises a salutary supervisory power over their verdict. (*People* v. *Knutte*, 111 Cal. 453, 455, [44 Pac. 166].) It is the province and the duty of the court to instruct the jury upon the law and such instructions are binding on the latter in its deliberations. (*Estate of Sharon*, 179 Cal. 447, 460 [177 Pac. 283].) In the case of *Logan* v. *Lewis*, 35 Cal. App. 663, 666 [170 Pac. 851], the jury, at the suggestion of the trial court, accompanied by proper instructions, amended its verdict by reducing the amount of the special damages awarded. The procedure therein pursued was upheld, and the opinion declares that "Inasmuch as the verdict of the jury had not been recorded nor the jury discharged, we think the court was warranted in permitting the jury to make this amendment. (Code Civ. Proc., sec. 619; 38 Cyc. 1893, 4; 22 Ency. Pl. & Pr. 967, 8; *McNutt* v. *Pabst*, 25 Cal. App. 177 [143 Pac. 77]; *Conlin* v. *Lewis Inv. Co.*, 26 Cal. App. 388 [147 Pac. 472].)"

[2] We are of the view that the change made in the verdict constituted an amendment which could properly be made before the verdict had been recorded and prior to the discharge of the jury. This amendment was necessary so that the verdict would be in conformity with the instruc-

tions. We do not regard as significant the fact that the amendment was made by the jury under compulsion. If it were held otherwise "the refractory jurors would be able to compel a new trial and thus defeat the exercise by the court of a power which it clearly possesses." (*Estate of Sharon, supra.*)

When the court instructed the jury as to the lawful limit of liability on the part of the defendant, if the jury should find the defendant liable at all, the court thereby indicated the only amount for which a judgment could lawfully be rendered. The jurors were not at liberty to refuse obedience to this instruction. If the court be in error in giving such an instruction the error may be revised and corrected on appeal.

Nothing said herein is opposed to the principles enunciated by the several cases referred to in appellant's briefs. In none of those cases did the jury disregard the instructions of the court upon a question of law and bring in a verdict contrary thereto. In the main those cases presented instances where the jury had passed upon questions of fact and the trial court had attempted to substitute its opinion in the place and stead thereof. As declared in one of said cases, "The functions of the jury in determining the facts of the case were usurped by the judge." (*Langdon* v. *Superior Court,* 65 Cal. App. 41, 43 [223 Pac. 72].) Such is not this case.

[3] Assuming that error was committed by the trial court in refusing the appellant's request for a poll of the jury, we think no prejudice resulted therefrom, for the reason that the jurors were all in favor of a verdict for the appellant and so announced themselves on the return of the verdict that was recorded. As to the amount of said verdict the polling of the jury would have been a "mere useless ceremony." (See *Estate of Sharon, supra.*)

[4] Before considering the amount of damages awarded to the appellant it may be said that by returning a verdict favorable to the appellant the jury impliedly determined that the evidence in the case was sufficient to show a dishonor of the two bills of exchange by the drawee bank and a waiver by the respondent drawer bank of the formality of protest. As these implied findings of the jury are not at-

tacked on this appeal the correctness thereof will not now be questioned.

[5] It remains to be determined whether the trial court correctly instructed the jury as to the amount of damages that might be awarded to the appellant in the event the jury was of the opinion that appellant should recover. In the solution of this problem we are precluded from having recourse to the provisions of the Uniform Negotiable Instruments Law as incorporated in the Civil Code July 31, 1917 (Stats. 1917, p. 1531). It is appropriate to note, however, that section 3266 of the new law provides: "The provisions of this title do not apply to negotiable instruments made and delivered prior to the taking effect hereof. . . . " The two bills of exchange involved herein were made and delivered on March 23 and April 2, 1917, respectively. Said two bills having antedated the adoption by this state of the Uniform Negotiable Instruments Law, the measure of damages recoverable from the drawer upon dishonor must be found in the law in effect prior to July 31, 1917. [6] Sections 3234 to 3239, inclusive, of the Civil Code constituted the law of this state when the two bills of exchange were sold, and were determinative of the amount of damages recoverable from the respondent bank upon the dishonor of said bills by the drawee and protest or waiver thereof. Section 3234 provided: "Damages are allowed as hereinafter prescribed, as a full compensation for interest accrued before notice of dishonor, re-exchange, expenses, and all other damages, in favor of holders for value only, upon bills of exchange drawn or negotiated within this state, and protested for nonacceptance or nonpayment." Section 3235 provided: "Damages are allowed under the last section upon bills drawn upon any person; . . . (3) if drawn upon a person in any place in a foreign country, fifteen dollars upon each one hundred dollars of the principal sum specified in the bill." Section 3236 provided: "From the time of notice of dishonor and demand of payment, lawful interest must be allowed upon the aggregate amount of the principal sum specified in the bill, and the damages mentioned in the preceding section." Section 3237 provided: "If the amount of a protested bill of exchange is expressed in money of the United States damages are estimated upon such amount without regard to the rate of exchange," and section 3238 provided: "If the amount of a protested bill of exchange is expressed in foreign money

damages are estimated upon the value of a similar bill at the time of protest, in the place nearest to the place where the bill was negotiated, and where such bills are currently sold.''

The amount of the bills of exchange involved herein was expressed in foreign money, and under said section 3238 the appellant was entitled to recover the value of said 80,000 marks at the time the bills were presented to the Hamburg Bank for payment, the jury having impliedly determined that protest had been waived. At the then existing rate of exchange, according to the record herein, said 80,000 marks would be the equivalent of $3,600 in United States money. In addition to this principal sum the appellant was entitled under section 3235 to damages of $15 upon each $100 thereof ($540), and interest, under section 3236, on the total of said two sums, or on $4,140, from the time payment was demanded of respondent.

The trial court's instructions upon the damages recoverable by appellant, as set forth in substance above, were in strict accordance with the rule of damages expressly declared by the above sections, and the trial court therefore did not err in confining the appellant's recovery as indicated. If German marks had increased in value the appellant would have been entitled to recover at the current rate. The fact that they depreciated in value could not affect the rule.

In view of the statutory rule of damages fixing the amount of recovery upon dishonored bills of exchange issued prior to the adoption by this state of the Uniform Negotiable Instruments Law, it becomes unnecessary to consider and discuss the numerous cases from other jurisdictions cited by the parties hereto. Since the statutory rule of damages is applicable in all cases of dishonored bills of exchange it is likewise unnecessary to pass upon the several contentions of the parties touching the cause of the dishonor of the two bills herein involved.

As the appellant was awarded the maximum damages to which it is entitled under the law a review of further asserted errors of the trial court would serve no useful purpose.

The judgment is affirmed.

Curtis, J., Seawell, J., Richards, J., Waste, C. J., and Sullivan, J., concurred.

Rehearing denied.