[Civ. No. 7683. First Appellate District, Division One.—February 9, 1932.]

J. A. BICKFORD et al., Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

544

Frank Karr, E. E. Morris and C. W. Cornell for Appellant.

Wood & McArthur and Linnell & Linnell for Respondents.

PARKER, J., *pro tem.* — This is an action brought by plaintiffs to recover damages resulting from an accident wherein their minor son was killed by an interurban train of the defendant railway company.

The case was tried before a jury and a verdict returned in favor of plaintiffs, and in accord with said verdict judgment was duly entered. Defendant's motion for a new trial was denied. The appeal of defendant from said judgment

is now before us. A discussion of the arguments presented by both sides necessarily involves analysis of the facts and further it will require that not only the facts sufficient to sustain the verdict be considered, but likewise it is essential that we consider the facts in entirety and such necessity will hereinafter appear.

The accident happened on July 4, 1925. The day was dry and clear, there being no storm or fog. The scene of the occurrence was in the city limits of Long Beach in Los Angeles County. The exact locality was at or near the intersection of Alamitos Avenue and the Pacific Electric right of way. The maps and diagrams used in the court below and constituting a portion of the present record, give the accurate courses of the streets and of the right of way. Alamitos Avenue runs northeasterly and southwesterly, and the right of way in question runs northwesterly and southeasterly. A street designated as Center parallels the right of way up to Alamitos, said Center Street being immediately east of the right of way. Hereafter, to avoid confusion, we will omit the compass variations and consider that Alamitos runs east and west, and the right of way north and south. The surrounding area may be described as level and without grade and the neighborhood of comparatively sparse improvements. Standing at the intersection of Alamitos and the right of way looking north, the right of way and objects thereon may be seen for a distance of some three thousand feet; and from the opposite direction, standing at a point on the right of way some three thousand feet northerly of the intersection, there is a clear and unobstructed view through to Alamitos Avenue. In the area of the intersection, the tracks of the railway are laid flush with the pavement, presenting no obstacle or obstruction to traffic. Without the intersection, the tracks are laid on top of the ground, rising to a height of three or four inches.

The record discloses without conflict that at the time in question, there was existing a barrier or obstruction that prevented travel proceeding easterly on Alamitos Avenue beyond the easterly boundary of the right of way. By reason of this, persons desiring to cross the avenue and turn south into Center Street would cross the tracks and then turn southerly down the right of way over the raised rails and short cut over the hazards into Center.

On the day of the accident the two minor sons of plaintiffs, in an open car, came to the intersection. The boys were named Harry Robert Bickford, aged about fourteen years, and Donald Bickford, aged about twelve years, the ages given being as of the date of the accident. The boy killed in the accident was the older of the two, and both boys hereafter will be referred to by the names Harry and Donald.

With this view of the physical situation, we may approach the accident. There appear from the record several conflicting stories as to the manner of the occurrence, and the circumstances surrounding. It is not our purpose to attempt to again determine the conflict of fact, but merely to outline the varying statements out of which the theories of the respective parties arise.

One version of the accident places the boys on the track of the defendant with the car stalled. Harry is seated in the car and Donald is out of the car and in front thereof attempting to crank the engine. There is no train in sight from any direction. The car is stalled on the track for approximately two minutes before the train comes along. Then, without warning of any kind, by bell, whistle or otherwise, the train coming at a speed of from fifty to sixty miles an hour, bears down upon the automobile. Donald has barely time to jump out of the way as the collision occurs. Harry, in the automobile, is killed. This version is given by witnesses not interested and observing the occurrence from varying viewpoints.

Another version is given by the surviving boy Donald. He states that the machine was struck at a point on the right of way some fifteen feet south of the intersection and in the area where the tracks are raised above the ground. From his testimony it would appear that much difficulty was encountered by the boys in the endeavor to cross over the raised tracks; so much in fact that the crossing could not be made and, after stalling the machine at least once, they turned back. After making the turn, the automobile again stalled on the track where struck. It is Donald's testimony that he was out of the machine attempting to crank the engine when the train bore down on them. He testifies that he had been thus engaged for about two minutes and that when he got out of the machine there was no train in sight.

The testimony adduced by defendant, of course, is in direct conflict with that of plaintiffs. Defendant's version, supported by the testimony not only of its employees but also by that of disinterested passengers may now be considered, and the events detailed in accord therewith. The train was traveling around thirty miles per hour. As it approached the intersection, the whistle was blown almost constantly until the crossing was reached. The motorman first saw the automobile straddling one of the other tracks, the train then being some two hundred feet from the point of collision. The automobile was then headed in the same direction as the train, that is, in a general southerly direction. The automobile was then about fourteen feet from the track on which the train was being operated. The automobile was then stopped. There was a clearance of about fourteen feet between the train and the automobile. The machine then started in a southeasterly direction and moved along about fifty feet. Then all of a sudden the automobile turned and came toward the train. At that time the train was about seventy-five feet away. The automobile was not stalled at any time on the tracks prior to the time the emergency brakes were applied to the train and the train and the automobile arrived simultaneously at the point of impact. The accident occurred about fifty feet southerly of the street intersection.

In concluding the review of the varying stories it may be well to note that at the coroner's inquest the witness Donald Bickford testified that he jumped to safety from the moving automobile; that when he jumped the automobile was crossing the tracks and he jumped when he saw the train coming and after he heard the whistle.

The verdict of the jury does not reflect its solution of the conflict in the facts. The verdict, being general, simply finds that defendant was liable. It then becomes highly important to consider the instructions given to guide the jury in its deliberations and this we will now proceed to do. We may, however, preface our inquiry with some general observations.

A litigant requesting it is entitled to proper instructions presenting his theory of the case based upon the pleadings and proof. And if the parties to an action rely upon different theories, instructions should be given, when re-

quested, as to each. As is said in *Raymond* v. *Hill*, 168 Cal.
473, 479 [143 Pac. 743, 745], " . . . the court was not un-
der duty to model its instructions solely upon the evidence
given on behalf of plaintiff. Its duty was to give instruc-
tions expounding the law upon every reasonable theory of
the case finding support in the evidence." And from *Burge*
v. *Albany Nurseries, Inc.,* 176 Cal. 313, 319 [168 Pac. 343],
comes the obvious reasoning that inasmuch as the jury has
to determine the facts upon which any theory must depend,
it is proper that instructions should be given on each theory
advanced.

We may now consider the attack upon the instructions
given and refused in the present case inasmuch as this pre-
sents practically the entire appeal.

Appellant first contends that it was error for the
trial court to instruct the jury upon the doctrine of last
clear chance. It is argued that under the facts of the case
there could be no application of the rule. In *Wallis* v.
*Southern Pac. Co.,* 184 Cal. 662, 672 [15 A. L. R. 117, 195
Pac. 408], the court held that the giving of an instruction
submitting an issue on the last clear chance where there is
not sufficient evidence to justify the submission is reversible
error. Conceding this to be the rule, for the purposes
hereof it may be unhesitatingly stated that there was an
abundance of evidence, which, if believed, would warrant
the instructions in the present case. If the decedent was
stalled on the track, with the brother out in plain view
attempting to crank the automobile, and the operator of
the train was looking directly at him from a distance of over
three thousand feet away when the train was proceeding at a
rate of between twenty-five and thirty miles per hour, and
the operator of the train made no effort to slacken his speed,
apply his brakes or sound warning, it seems to need no cita-
tion of authority to demonstrate the application of the doc-
trine.

Appellant next makes the contention that the trial
court erred in instructing the jury on the question of
wanton negligence, and in submitting to the jury the ques-
tion of wanton negligence on the part of defendant. The
court instructed the jury that the defense of contributory
negligence was not a defense to wanton conduct. Then the
jury was told that to constitute wantonness in the eyes of

the law it is not necessary that an intent to injure be present; that gross negligence, or what is sometimes called the *last* negligence, may be the equivalent of wanton negligence and where the conduct of a defendant exhibits reckless indifference to probable consequences, with knowledge of facts and circumstances likely to result in injury, it becomes wanton negligence.

The court then further instructed the jury as follows: " . . . if you find from a preponderance of the evidence that the motorman of the defendant wantonly operated its train of cars at a wanton rate of speed and that the said conduct was the proximate cause of the death of Harry Robert Bickford, then your verdict should be for the plaintiff regardless of whether or not Harry Robert Bickford was a trespasser upon the tracks of defendant . . . the word 'wanton' as used in plaintiffs' complaint and these instructions does not necessarily imply an intent or purpose to inflict an injury, for wantonness may consist of a reckless indifference or disregard of the natural or probable consequences of doing any act or omitting to do an act." The language of the foregoing instructions, omitting the application to the facts, is taken from decisions of the Supreme and Appellate courts. (*Esrey* v. *Southern Pac. Co.,* 103 Cal. 541 [37 Pac. 500]; *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514 [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Kramm* v. *Stockton Elec. R. R. Co.,* 3 Cal. App. 606, 616 [86 Pac. 738, 903].)

In the language of Chief Justice Myers (*McKeon* v. *Lissner,* 193 Cal. 297, 305 [223 Pac. 965]), this presents an excellent illustration of the danger inhering in the practice of copying language used in an opinion of a reviewing court and embodying the same in an instruction to be given to the jury.

In the cases cited the facts perhaps warranted a conclusion such as the expressions used might indicate, but there the facts were found before characterized. A careful reading of the cases leaves it clear that the terms "wanton" and "gross" as used therein were merely descriptive terms used in discussing the negligence found in the omission to heed the last clear chance to avoid an injury. It is not the law that the defense of contributory negligence is not a defense to wanton conduct as the term "wantonness" was

defined. The jury was told that wantonness may consist of a reckless indifference or disregard of the natural *or probable* consequences of doing an act or omitting an act. Disregard of probable consequences is the characteristic of all negligence and might be said to be the germ thereof. And it seems to be a far-fetched notion to hold that contributory negligence is taken out of the case entirely.

From a purely academic standpoint the instructions on the subject might be proper inasmuch as the words used might include within themselves through prior adjudication other words which would pad out the thought conveyed. But this would be a matter of grave argument and we feel it somewhat hazardous to speculate upon the construction a lay jury would place upon the instructions. If it be admitted that many different constructions could and would be used, then the giving of the instruction would be erroneous to the extent that the same were argumentative and misleading.

Appellant then predicates further error in the court's action on other instructions given and refused. The court instructed the jury that a violation of an ordinance or law was negligence *per se* and then further instructed to the effect that operation of the train of defendant at a rate of speed in excess of that fixed by law was negligence as a matter of law and added thereto these words: " . . . and if you further find that by reason of said negligence, the said Harry Robert Bickford was injured and killed, the burden is upon the defendant to overcome the presumption of negligence and to excuse the same."

The objection made is that the jury is not advised that the negligence found must be the proximate cause of the injury. However, in the same instruction and by way of introduction the jury was told that such negligence must directly cause the injury. While there may be a distinction between the direct cause and the proximate cause, it seems clear that it would cast a greater burden on plaintiffs to prove the negligence a direct cause. The instruction would then become even more favorable to defendant than the phrasing urged, in which case there would be no ground of complaint. The term "proximate cause" has received interpretation in the case of *Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389 [212 Pac. 913]. There it is held that proximate

cause is the efficient cause. And between efficient cause and direct cause there is not difference of sufficiency to justify interference with the jury's verdict.

The next instruction attacked is as follows: "You are instructed if the decedent was not, when first seen by the motorman or employee of the defendant, upon the track, but was approaching it with the apparent intention of going upon it without discovering the train, ordinary care required its speed to be checked. The duty of those on the train required them to stop it, if danger was threatened to decedent, whether he was on the track, near to it, or approaching it. It is the settled law that the decedent's negligence will not enable defendant to escape liability, if the act which caused the injury was done by defendant after it discovered the decedent's negligence, and if the defendant could have avoided the injury in the exercise of reasonable care." Here too is an instruction which properly pieced together may present a true picture, but the same is poorly or perhaps expertly fashioned; for instance, the phrase "approaching it (the track) with the apparent intention of going upon it". Obviously the *apparent intent* of any person traveling north is to reach a northerly point, but if we go further and hold that, in one approaching a deep open cut, the apparent intent is to drop into it, we are entering highly speculative ground. The last part of the instruction told the jury that if danger was threatened decedent, whether he was on the track, near to it, or approaching it, the duty of the motorman required him to stop the train. The condition "if danger was threatened to decedent" is claimed as the restrictive clause that makes the instruction proper. Further, it is urged that this latter portion must be construed as an integral part of what precedes it but its plain wording precludes such construction because it obviously adds something not theretofore included. The terms "near to it" *or* "approaching it" include one waiting for the train to pass as well as one approaching mindful of the train's presence. We think the giving of the instruction was improper. (*Haber* v. *Pacific Elec. Ry. Co.*, 78 Cal. App. 617 [248 Pac. 741]; *Billig* v. *Southern Pac. Co.*, 192 Cal. 357 [219 Pac. 992].)

Another instruction presented by appellant as error reads: "You are instructed that even if the decedent was

negligent in crossing the tracks of the defendant, but that defendant, after he discovered decedent's position of danger, either ran its train at a dangerous or uncontrollable rate of speed, or ran its train at a proper speed but negligently failed to stop the train, he who has the last clear chance of avoiding injury, notwithstanding the negligence of the other party, is deemed responsible for it.''

Preliminary to a discussion of this instruction we may note respondents' defense thereof. Respondents replying to appellant's criticism of the instruction state in their brief, ''A careful examination shows that this instruction correctly states the law although it may be said to be loosely drawn.'' Appellant cites *Palmer* v. *Tschudy,* 191 Cal. 696, 700 [281 Pac. 36], supporting the rule that the doctrine of last clear chance demanded that the motorman see the deceased upon the tracks, in a position of danger from which he could not extricate himself, and that the motorman be aware or should know of the dangerous situation of deceased. In the instruction the jury was told that after the motorman discovered decedent's position of danger, regardless of decedent's opportunity and ability to extricate himself, it was the positive duty of the motorman to stop the train. The instruction, both in its wording and construction, told the jury that if the motorman going at the proper rate of speed saw the decedent in a position of danger, he had the last clear chance to avoid the injury; that the chance presented itself in the stopping of the train and if the motorman failed therein the responsibility was on defendant. Without other citation than already given herein, we hold that the instruction should not have been given.

Another instruction was as follows: ''The court instructs the jury that if you believe from a preponderance of the evidence that the motorman in charge of defendant's train of cars saw the automobile between the rails of the track on its private right of way and could thereafter with ordinary diligence have stopped said train and avoided the killing of said Harry Robert Bickford; and if you further believe from a preponderance of the evidence that . . . such failure to stop said train was the proximate cause of the death of Harry Robert Bickford, then your verdict should be for plaintiffs.''

This instruction becomes confusing and misleading from the fact that there were at least two sets of rails or tracks and there was a direct conflict as to the position of decedent when the train was first in sight. If the decedent had been on the northerly set of tracks and proceeding as he admittedly was, then the instruction would be clearly erroneous. We might, however, assume that the instruction could be read and understood as referring only to the track on which the accident occurred. The instruction thus read needs no further comment, save to note the omission of the danger of the situation, the knowledge of the motorman and the ability to escape. Assuming that the motorman saw the automobile on the tracks in a place of apparent safety, moving along in no apparent trouble, it would have involved no duty on his part to stop. (*Young* v. *Southern Pac. Co.,* 189 Cal. 746–757 [210 Pac. 259].)

Another instruction was as follows: ''The court instructs the jury that if you believe from a preponderance of the evidence that the motorman in charge of the train of cars of the defendant saw the automobile between the rails of the track of the defendant in its private right of way and could thereafter with the appliances at hand and with the exercise of ordinary diligence have warned said Harry Robert Bickford of the approaching danger by sounding its whistle in time to have avoided the killing of the said Harry Robert Bickford; and if you further find from a preponderance of the evidence that said motorman after seeing said car failed to give the said Harry Robert Bickford any warning of the approaching danger in sufficient time to enable him to avoid being killed by said approaching train of cars; and if your further believe from a preponderance of the evidence that the failure of said motorman to give such warning was the proximate cause of the death of said Harry Robert Bickford, then your verdict should be for the plaintiffs.''

The instruction, regardless of anything else, places upon the motorman the duty of sounding his whistle. This duty is placed upon him as the test of his liability. The jury may have found that the motorman used every reasonable effort to stop the train; he may not have seen the automobile in time to give warning of danger *in sufficient time to enable Harry Bickford to avoid the calamity.* The instruc-

tion narrowed down the entire case and directed a verdict on one phase only. Contributory negligence and last clear chance were eliminated completely. And the instruction further assumes that decedent was not looking directly at the approaching train and that decedent was not aware of the threatened danger. It assumes further that decedent was in a position of peril and assumes likewise the speed of the train. Testing the instruction by the authorities that follow hereinafter it was improper and erroneous.

 Both of the instructions last discussed direct a verdict for the plaintiff, conditioned upon the finding of certain facts. It is well settled, both in this state and elsewhere, that if the court undertakes to instruct a jury under what state of facts a plaintiff may recover, and directs a verdict upon the finding of such facts, then the instruction must be complete in itself and state all of the facts which entitle plaintiff to a recovery. (*Killelea* v. *California Horseshoe Co.*, 140 Cal. 602 [74 Pac. 157]; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599]; *Beyerle* v. *Clift*, 59 Cal. App. 7 [209 Pac. 1015].) Tested by these authorities and others too numerous to note, the instructions were not complete and should not have been given.

It is the contention of respondents that if it be found that the instructions criticised were improper in themselves, nevertheless we must look to the instructions as a whole and ascertain not the character of one or two isolated instructions, but decide whether or not the jury was fully and fairly instructed on the issues to be determined. This we have done and without the detail of each instruction given we find not a reconcilement but a hopeless confusion. It is a case where the court gave the instructions requested by both sides. One instruction tells the jury all that is necessary for a verdict and the next one states that the same facts are insufficient.

In this case the evidence was particularly loose and conflicting. As pointed out at the commencement, there were many different theories of the accident and much evidence in support of each theory. There was practically but one thing upon which all sides agreed, namely the unfortunate death of the boy. And the instructions warrant the conclusion that this was about all that the jury considered. There were other instructions given at defendant's request

after having been modified. Those embrace four instructions on the law of contributory negligence. We quote these instructions, in part, to illustrate the error complained of as well as to demonstrate the conflict of instructions as hereinafter noted.

The defendant's requested instruction reads:. "No negligence on the part of the defendant . . . , *however gross,* justified Harry Robert Bickford in omitting to perform his duty in looking or listening for cars, and in order to ascertain if a car was approaching to stop his automobile, and if he failed in this respect he was negligent, and if such negligence contributed proximately to the cause of the accident, then plaintiffs cannot recover. . . . '' (Italics ours.)

The modification changed the instruction by striking out the words following the phrase "and if he failed in this respect he was negligent" and inserting as follows: "and if such negligence *was the sole proximate* cause of the accident, then plaintiffs cannot recover. . . . ''

There were four similar modifications. In each instance the defendant's proposed instructions set up conditions under which decedent would have been negligent, and the proposed instructions concluded with the statement that if such negligence contributed proximately or directly to the happening of the accident, plaintiffs could not recover. The court modified each instruction by requiring that such negligence on the part of decedent be the sole proximate cause of the accident. It seems manifest that the phrase "sole proximate cause" removes contributory negligence from the inquiry, inasmuch as "sole" implies exclusive and alone. It is unnecessary to attempt citation to show the error in these modified instructions.

No better support could be found for appellant's argument than is presented in respondents' reply. Respondents state: '' . . . said instructions are not subject to . . . criticism. In the first place the instructions do not undertake to instruct under what circumstances plaintiff is entitled to recover, but only to announce one circumstance under which he is not entitled to recover. In the second place, said instructions are only to the effect that if the negligence of the deceased . . . was the *sole proximate cause* of the accident, plaintiffs cannot recover and said instructions are not to the effect that plaintiff can recover if the negligence of said

deceased only contributes proximately to the cause." If this reply does not admit the error complained of it demonstrates error in other respects; namely, that the instruction was argumentative and misleading.

Respondents then present another ingenious argument to the effect that the instructions as proposed omitted the features of wantonness and last clear chance and that the court below modified the instructions thinking thereby that the instructions as modified took into consideration the wantonness and last clear chance doctrine; that therefore the act of appellant in offering the instructions as it did misled the trial judge and that therefore appellant is estopped to press the error. We quote a portion of the language taken from respondents' brief. "We submit that an appellant who in the trial court floods the court with 38 instructions, 20 of which are defective, is estopped from taking advantage of an error made by the trial judge in attempting for appellant to correct a small portion of appellant's defective instructions so that they may be given. . . . It is impossible for a trial judge, and cannot be expected of a trial judge, to devote at the trial the same careful attention to the instructions that he would give in the quiet of his study, and he is entitled to protection against errors that are occasioned by a defendant who inundates him with a deluge of unnecessary and defective instructions. So is the wholly innocent party entitled to protection—in this case the respondents."

It is claimed by appellant that the court erred in another modification, through which more than ordinary care was required on the part of the motorman. The proposed instruction after detailing certain conditions, if found, stated: "If when the motorman saw the automobile would attempt to cross, he applied his brakes and used ordinary care to stop his car, that was all that was required of him." The instruction as modified and given was: "If when the motorman saw the automobile would attempt to cross, he applied his brakes and used *all the means at his command* to stop his car, that was all that was required of him." We do not consider the modification important. Ordinary care implies the conduct of a reasonably prudent man under similar circumstances, and any person in the exercise of ordinary care who was trying to stop a car would do everything within his power. However, there is something speculative about the

charge in this respect. Such an instruction may well be omitted for the reason that thereunder the jury might test the conduct of the motorman by the possibilities afforded in the light of subsequent events rather than through the then present conditions.

Approaching a conclusion which we have found difficult to hasten, we take up the final claim of error in the instructions to the jury. The case had been submitted to the jury. After having deliberated for some time, the jury returned into court and through its foreman propounded this question: "If both parties (meaning plaintiffs' decedent and defendant's motorman) are guilty of negligence but not equally guilty could there be any damage for the plaintiffs?" To which query the court replied: "The court will not answer this question yes or no, as it declines to direct a verdict one way or the other. But the court gives you the following additional instructions, to-wit: In this state the courts do not recognize the principle of law relating to comparative negligence. In other words, you cannot weigh the negligence of one against the negligence of the other. However, if from a preponderance of all the evidence you find the negligence of the defendant was wanton as defined in another instruction already given you, then the contributory negligence of deceased, if any, should not be considered. And if you find by a preponderance of the evidence that the act which caused the injury was done by defendant's motorman after he discovered the decedent's negligence and if defendant's motorman could have avoided the injury by the use of all the means at his command and did not do so then the negligence of the decedent is not to be considered."

There is little to be left to the imagination as to the effect of this instruction, unless one can imagine the despair which would overtake any counsel representing a defendant when he heard such an instruction given. The jury, by the question, had manifested its inability to determine the effect of a contributing or concurrent negligence. The result of the other confusing and misleading instructions was manifest. In seeking more light the way was made obvious for them. First, they were told that if the negligence of the defendant was wanton, then the negligence of the decedent should not be considered.

Wantonness must necessarily involve the surrounding circumstances, including the acts and the position of the decedent. Throughout this entire record respondent always falls back on this theory of wantonness in the abstract. He seems to assert something almost criminal in the term. His insistent argument becomes confusing in this respect. The law of negligence embraces three main principles. First, it provides that one who is injured through the negligence of another may recover damages; second, as a qualification of this rule, it provides that if the injury was brought about through the negligence of the injured party, he could not recover, which second rule is, of course, stated generally without attempt at detail of the phases of contributory negligence; the third principle involves the law of the last clear chance. These three cover almost the entire body of the law of negligence.

Here the respondents attempt to create a sort of superlaw crowning the entire structure. They argue that there may be and is a degree of negligence classed as wanton, which entails responsibilities not included within the other principles; that if one commits an act that may be characterized as ''gross'' negligence then he is without the protection afforded by the general rule. The instruction to the jury, already noted, that gross negligence, or what is sometimes called the last negligence, is the equivalent of wanton negligence, confirms his view. To say that gross negligence deprives one of the defense of contributory negligence is creating a new doctrine and one unwarranted by the present state of the law. And in this instruction given to the jury after the submission, the doctrine of last clear chance is attempted to be stated in too general terms and without regard to the essentials thereof.

To say that if the act causing the injury was done by the motorman after he discovered decedent's *negligence* disregards the result of that negligence on the peril of decedent, and to say that if defendant's motorman could have avoided the injury by the use of all the means at his command and did not do so, the negligence of decedent is not to be considered is placing the duty of the motorman greatly beyond the duty imposed upon him under any doctrine, whether last clear chance or otherwise. This last instruction being erroneous was manifestly prejudicial. (38 Cyc., p. 1674; 24

Cal. Jur. 734; *Langdon* v. *Superior Court,* 65 Cal. App. 41–43 [223 Pac. 72]; *People* v. *Frank,* 71 Cal. App. 575 [236 Pac. 189]; *McMinn* v. *Whelan,* 27 Cal. 300.) These authorities go to the point of the prejudicial effect of erroneous instructions. Indeed, it is beyond argument that any lawyer would appreciate at once just what the verdict of a jury would be after the instructions under the conditions given.

There are other errors claimed in the rulings of the trial court on the admission and rejection of evidence. These we have examined and conclude that the error, if any, would not affect the result of the trial.

The question of instructions to juries has become a troublesome one and particularly in cases of this character. If a jury is to speculate and guess with instructions, it might as well guess without them. Thus we could do away with the entire trouble. Yet a happy medium suggests itself. It had become the custom to request as many as thirty instructions on the question of presumption of innocence and reasonable doubt. The legislature by simple enactment brought the number down to one. It seems that a similar course could be pursued in this character of action. A simple codification of the law could be accomplished in a few code sections that would cover the entire field and make the instructions uniform and complete. In a trial court's attempt to state and restate the principles applicable to every possible finding of fact, there is bound to follow a multiplicity and duplication, the result of which is to confuse and mislead.

The entire law of negligence is now attempted to be presented in a series of excerpts from decisions of courts of last resort without regard to the facts before the jury. On the whole, the present system leads to appeals and prolongation of litigation when, on the other hand, a few all-embracing statements of the law would cover fully the same ground. For further reference, we cite the following authorities in support of the views herein expressed on the doctrine of last clear chance: *Riney* v. *Pacific Elec. Ry. Co.,* 45 Cal. App. 145 [187 Pac. 50]; *Young* v. *Southern Pac. Co.,* 182 Cal. 369–388 [190 Pac. 36]; *Young* v. *Southern Pac. Co., supra; Arnold* v. *San Francisco-Oakland T. Rys.,* 175 Cal. 1 [164 Pac. 798]; *Bagwill* v. *Pacific Elec. Ry. Co.,* 90 Cal.

App. 114 [265 Pac. 517]; *Haber* v. *Pacific Elec. Ry. Co.,* *supra; Palmer* v. *Tschudy, supra,* at page 700; conflicting instructions: *Starr* v. *Los Angeles Ry. Corp., supra; Galloway* v. *United Railroads,* 69 Cal. App. 770 [232 Pac. 491]; *Alcamisi* v. *Market St. Ry. Co.,* 67 Cal. App. 710 [228 Pac. 410].

In *O'Meara* v. *Swortfiguer,* 191 Cal. 12, 17 [214 Pac. 975, 977], it is said: "We have no means of ascertaining the exact conclusion of the jury upon the facts. There were no special findings and we cannot for that reason say whether the jury, if properly instructed, would have rendered a verdict in favor of the plaintiff or the defendant. The parties were entitled to have a jury determine the facts. The failure of the jury to pass upon and determine the facts is, of itself, a miscarriage of justice, unless the facts that are admitted are proved beyond controversy, this court cannot say that defendant was liable for the injury. In this case we need not inquire to what extent this court may weigh the evidence in determining whether or not there has been a miscarriage of justice, for it is clear that the ascertainment of fact in this case should have been left to the jury." The quotation has peculiar application to the case at bar.

For the reasons hereinbefore stated, it is our conclusion that the judgment and order must be reversed and it is so ordered.

Tyler, P. J., and Knight, J., concurred.